In the ESTATE OF Eleanor H. HAAN, Deceased, Gordon C. Haan, Personal Representative of the Estate of Eleanor H. Haan, Deceased, Petitioner–Appellant,

v.

Albert Edward HAAN, Sue Ann Haan, Russell Haan, and Michelle A. Haan, Respondents–Respondents.

No. 26982.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 12, 2007.

Motion for Rehearing and Transfer to Supreme Court Denied Oct. 4, 2007.

Application for Transfer Denied Nov. 20, 2007.

---

1. *State v. Shockley*, 98 S.W.3d 885, 891 (Mo. App.2003).

2. *Dorsey v. State*, 113 S.W.3d 311, 317–18 (Mo.App.2003).

Greggory D. Groves, Springfield, MO, for Appellant.

G. Edwin Proctor, Liberty, MO, for Respondent.

Before GARRISON, J., BARNEY, J. and BATES, C.J.

PER CURIAM.

This is an appeal by the Estate of Eleanor Haan, deceased, by Gordon C. Haan, personal representative, ("the Estate") from an adverse judgment entered on its petition for discovery of assets filed in the Circuit Court of Greene County, Probate Division ("trial court") against Albert Edward Haan ("Albert"), his wife, Sue Ann Haan ("Sue"), Russell Haan ("Russell"), and his wife, Michelle A. Haan ("Michelle") (collectively referred to as "Respondents").[1] We affirm.

Eleanor H. Haan ("Eleanor") owned three tracts of real estate in DeKalb County, Missouri, referred to herein as Tracts 1, 2 and 3. On September 28, 2001, she conveyed by warranty deeds Tract 1 to Albert and Sue; Tract 2 to Russell and Michelle; and Tract 3, one-half to Albert and Sue, and one-half to Russell and Michelle. Those conveyances were made with the understanding between all the parties that Eleanor could revoke them, and that in order to receive the conveyances, it was required that Albert, Sue, Russell and Michelle sign acknowledgments that the conveyances were revocable. Accordingly, contemporaneously with Eleanor's three warranty deeds, Albert, Sue, Russell and Michelle signed documents titled "Acknowledgment of Revoca-

---

1. We refer to the parties by their first names for purposes of clarity. No disrespect is intended.

ble Transfer" ("Acknowledgments") by which they acknowledged that "(1) [Eleanor] has the right to revoke the conveyance ...; and (2) each and all of the undersigned have the legal duty to convey all of his, her, their right, title, and interest in and to the [property described in the conveyance] to [Eleanor] at her written direction."

On February 18, 2002, Eleanor signed a "Revocation of Conveyance" ("Revocation") as to each of the three deeds in which she stated her desire to exercise her retained right to revoke the conveyances, "[Eleanor] hereby revokes the conveyance that she made to such persons by the aforesaid Missouri Warranty Deed, and the said [Eleanor] hereby revests in herself alone all title to the above-described real property." Those Revocations were recorded on February 19, 2002. Albert and Sue testified in their depositions that they received a letter from attorney Robert S. Thedinger ("Thedinger"), which Albert said told them "that Eleanor had elected to—the intent of the revocation." Sue said that when the letter arrived, she understood that Eleanor was "wanting the property back." Albert said that the only reason he didn't transfer the property back to his mother was because he was not asked to. Russell testified in his deposition that he and Albert talked about the "property being revoked" in February. All of that deposition testimony was offered at trial.

At trial, Albert testified that he had been mistaken and had not actually received a letter from Thedinger in February 2002. Instead, he testified that he had received a copy of the Revocation in February 2002 after it was recorded, but did not "understand what it did." He said that he did not believe that the Revocation was effective because there was no communication between Eleanor and himself; that he would have "[a]bsolutely" deeded the property back to her if "she told [him] that she revoked it"; that he and his brother never received any written direction from their mother; and if his mother had handed the Revocation to him, he "[a]bsolutely" would have given the property back to her.

Russell testified at trial that he never received a communication from Eleanor in writing or any other way asking him to convey back the properties. He also said that if he were asked the same questions as Albert had been at trial, his answers would be the same.

Eleanor died on April 30, 2002. The estate was opened, and the personal representative filed a petition for discovery of assets relating to the above parcels of real estate. After a hearing, the trial court entered its judgment, finding "all issues in favor of [Albert, Sue, Russell and Michelle]," and awarded Tract 1 to Albert and Sue, Tract 2 to Russell and Michelle, and Tract 3, one-half to Albert and Sue and one-half to Russell and Michelle. No findings of fact and conclusions of law were requested or entered by the trial court. This appeal followed.

The standard of review of a judgment entered by the probate division of the circuit court is that established in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Ryan v. Spiegelhalter,* 64 S.W.3d 302, 305 (Mo. banc 2002). Thus, the judgment will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

■ The Estate raises two points on this appeal. In the first, the Estate contends that the trial court's judgment awarding Tract 1 to Albert and Sue, Tract

2 to Russell and Michelle, and Tract 3 to Albert, Sue, Russell and Michelle, as well as awarding them all sums received by the Estate from the various properties, was erroneous because Eleanor and Respondents agreed that she "could revoke any property she transferred to Respondents and [Eleanor] exercised her right to revoke the conveyance of the property to Respondents." In support, the Estate argues that Respondents had the obligation to reconvey the property to Eleanor because they agreed, in the Acknowledgements, that Eleanor had the right to revoke the conveyances she. made to them; and Eleanor did revoke the conveyances by recording the Revocation, a copy of which was received by Respondents. In support, the Estate cites cases such as *Farmers' Elec. v. Mo. Dept. of Corrections,* 977 S.W.2d 266, 271 (Mo. banc 1998), for the premise that "if a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an act of God, the law, or the other party." While we have no dispute with that general principle of law, it does not compel a judgment for the Estate in this case.

 Eleanor conveyed the three tracts by general warranty deeds containing the words, *inter alia,* that she thereby "grants, bargains, sells, conveys, and confirms" to the grantees the real estate described "to have and to hold the same, together with all rights and appurtenances to the same belonging, unto the [grantees] and their heirs and assigns forever."

The intent to convey an indefeasible estate in fee simple is effected by use of a covenant in the deed, by the grantor, in which the grantor represents ownership at the time of the execution of the deed of an indefeasible estate in fee simple. This is done, according to Missouri statutes, by use of the words "grant, bargain and sell" in the granting clause of the deed by which title to real estate is conveyed.

*Webster Oil Co., Inc. v. McLean Hotels, Inc.,* 878 S.W.2d 892, 894 (Mo.App. S.D. 1994). Likewise, a conveyance of real estate passes the entire ownership interest of the grantor unless the instrument shows, expressly or by necessary implication, the grantor's intent to pass a lesser interest. *Id.*

 Covenants in a deed are governed by the same rules of construction applicable to any covenant in a contract. *Kling v. Taylor–Morley, Inc.,* 929 S.W.2d 816, 819 (Mo.App. E.D.1996). "Where possible, courts give effect to the intent of the parties as expressed in the language of the covenant." *Id.* The only language of reservation contained in the conveyances here related to encumbrances, taxes and assessments, public and private roads, and restrictions, reservations, easements, conditions, and covenants of record affecting the property. The Acknowledgments relied on by the Estate, however, were not of record when the warranty deeds were recorded on September 28, 2001. Instead, the Acknowledgments were recorded on February 14, 2002.[2]

Beyond that, it is important to highlight the specific terms of the Acknowledgments. As indicated earlier, the Estate treats these Acknowledgments as contracts to reconvey, yet none of them recite any consideration for that obligation. They each do recite that Eleanor's warranty deeds "granted, bargained, sold, con-

---

**2.** The Estate does not contend that the Acknowledgments are included in the exception as to "restrictions, reservations, easements, conditions, and covenants of record affecting this real property."

veyed, and confirmed" to the grantees the property to which it applied. They each then contained the following language:

> Each and all of the undersigned hereby acknowledge that: (1) [Eleanor] has the right to revoke the conveyance of the above-described real property that she made by that deed; and (2) each and all of the undersigned have the legal duty *to convey all of his, her, their right, title, and interest in and to the above-described real property to [Eleanor] at her written direction.* (Emphasis added.)

Assuming, without deciding, that these Acknowledgments constituted enforceable contracts, it is important to remember that they called for a *reconveyance* at Eleanor's "written direction."

The act relied on by the Estate to create the alleged obligation to reconvey the property were the three documents entitled "Revocation of Conveyance" signed by Eleanor on February 18, 2002. Each of those Revocations again recited that Eleanor's warranty deeds had "granted, bargained, sold, conveyed, and confirmed" the property to the grantees; recited that the Acknowledgments, although signed on September 28, 2001, were recorded on February 14, 2002; recited, *inter alia,* the wording of the Acknowledgments that the grantees had a duty "to convey all of his, her, their right, title and interest in and to [the real property] to Eleanor at her written direction"; and then each recited the following:

> Wishing now to exercise her retained right to revoke the conveyance of the above-described real property to the said [names of the grantees in each deed], which right of hers was acknowledged by those individuals in the aforesaid written instrument, [Eleanor] hereby revokes the conveyance that she made to such persons by the aforesaid Missouri Warranty Deed, and [Eleanor]

*hereby revests in herself alone all title to the above-described real property.* (Emphasis added.)

As pointed out by Respondents, it is significant that Eleanor did not give a written direction to reconvey as provided in the Acknowledgments, but instead purported to revest in herself title without further action by them as grantees of the warranty deeds. Thus, Eleanor did not do the one thing the Acknowledgments required, assuming they were binding contracts, in order to compel reconveyances of the properties, i.e., give a written direction to convey.

For these reasons, the Estate's first point on appeal, relying on Respondents' Acknowledgements and her Revocations as establishing its right to the properties, and the sums received from them, is not well taken and is denied.

 In its second point on appeal, the Estate contends that the trial court erred in awarding the properties and sums received from them to Respondents because the latter "were estopped from claiming any interest to the property once [Eleanor] exercised her right to revoke the conveyance of the property." In support, it argues that "a party is not permitted to take a position on a matter that is directly contrary to, or inconsistent with a position previously taken by that same party," citing *Owner Operator Ind., Drivers v. New Prime,* 133 S.W.3d 162, 170 (Mo.App. S.D. 2004). Based on that premise, it argues that because of Respondents' acknowledgment of Eleanor's right to revoke the conveyances to them, they "are estopped from now claiming that the estate is not entitled to the real property." They conclude that: "Based upon Respondents' promise that Respondents would convey to [Eleanor] their respective right, title and interest in the real property if revoked by [Eleanor], the Respondents received from [Eleanor]

the property. A manifest injustice would result if Respondents were allowed to retain the property."

The Estate also cited *Dreckshage v. Dreckshage*, 352 Mo. 78, 176 S.W.2d 7 (1943), in which the grantor conveyed property to the defendant without providing in the deed that it was in trust for the grantor. The Supreme Court of Missouri held that the trial court had erred in excluding a statement by defendant that acknowledged that he received the conveyance as trustee for the grantor, and concluded that the grantor was entitled to a return of the property, and that, upon defendant's refusal to do so, the grantor could seek relief. *Id.* at 13–14.

Here, assuming again that the Acknowledgment created a duty upon Respondents, there is no dispute about its terms. What the Estate overlooks in making this argument is that, as referred to above, the Acknowledgement called for Respondents to "convey" the property at Eleanor's "written direction." Instead of there being a "written direction" from Eleanor, she executed the Revocations purporting to automatically revest title in herself. We do not construe Respondents' position in this case as being inconsistent with their Acknowledgments. The simple fact is that Eleanor did not make a written direction prior to her death for Respondents to execute conveyances to the properties. Accordingly, this point is denied.

The judgment of the trial court is affirmed.