In the ESTATE OF Betty Jean COLLINS, Deceased;

Robyne D. Ridley–McKinney and Charlotte Lajean Ridley, Appellants,

v.

Tina Shoemaker, et al., Respondents.

No. WD 75448.

Missouri Court of Appeals, Western District.

Aug. 6, 2013.

Robert T. Wilhemus, for appellants.

Gary V. Cover, for respondents.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

JOSEPH M. ELLIS, Judge.

Appellants Robyne Ridley–McKinney and Charlotte Ridley appeal from a judgment entered in the Circuit Court of Benton County concluding that Tina Shoemaker had the right and authority, pursuant to a durable power of attorney, to determine the disposition of the body of Appellants' mother, Betty Jean Collins. For the following reasons, that judgment is reversed.

■ On June 12, 2012, after having been diagnosed with cancer, Collins executed a Durable Power of Attorney for Health Care Choices & Health Care Directive [1] appointing Shoemaker "as [her] agent for health care choices when [she is] unable to make decisions or communicate [her] wishes." In the event that Shoemaker could not serve as her agent, Tammy Appleberry was appointed to fill that role.[2] The Durable Power of Attorney states:

> This durable power of attorney becomes effective when two physicians certify that I am incapacitated and unable to make and communicate health care choices.
>
> **You may choose to have one physician, instead of two, determine whether you are incapacitated. If you want to exercise this option—allowing one physician to determine whether you are incapacitated—initial here.**

Collins initialed that provision, indicating that certification by one physician was sufficient to effectuate the power of attorney. The Durable Power of Attorney goes on to state that, when effective, Collins's agent would have the power to:

> —Consent, refuse or withdraw consent to artificially supplied nutrition and hydration.

---

1. Collins utilized a form that was provided for free at the Warsaw Health Clinic.

2. Appleberry is Collins' niece, and Shoemaker is Appleberry's daughter and Collins' grandniece.

—Make all necessary arrangements for health care on [Collins's] behalf. This includes admitting [Collins] to any hospital, psychiatric treatment facility, hospice, nursing home or other health care facility.

—Hire or fire health care personnel on [Collins's] behalf.

—Request, receive and review [Collins's] medical and hospital records.-Take legal action if necessary to do what [Collins] directed.

—Carry out [Collins's] wishes regarding autopsy and organ donation, and decide what should be done with [her] body.

After executing the durable power of attorney, Collins was involved in an automobile accident on June 16, 2012, and died instantly. Believing she possessed the authority to do so under the durable power of attorney, Shoemaker sought to have Collins cremated and to have the urn given to Appleberry. Appellants, who wished for Collins to be buried in a family burial plot, filed a Motion for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction in the Circuit Court of Benton County to prohibit Shoemaker from cremating Collins's body and disposing of the ashes.[3] Appellants also filed an Application for Letters of Administration in the probate division. Both matters were subsequently consolidated in the probate division.

A temporary restraining order was issued, and the matter was tried to the probate court on June 28, 2012. Appellants argued that Shoemaker never became Collins's attorney in fact under the

durable power of attorney because Collins had never become incapacitated before her death and because no physician had ever certified her as incapacitated. Shoemaker argued that a physician's certification was not required with respect to the provision related to the disposition of the body, claiming such a requirement would be contrary to statutory language allowing a power of attorney to grant the right of sepulcher to the designated agent. On July 12, 2012, the court entered its judgment concluding that the durable power of attorney was effective and had conveyed the right of sepulcher over Collins's body to Shoemaker.[4] The court noted that Collins's body was presently in the physical custody of the Reser Funeral Home and the legal custody of the Benton County Coroner and ordered the body conveyed to the custody of Shoemaker; however, the judgment provided that, in the event Appellants decided to appeal, Appellants would be responsible for and pay all costs associated with keeping the body in the physical custody of the Reser Funeral Home and the legal custody of the Benton County Coroner pending the resolution of the appeal. As a result, Collins's body remains in storage at the Reser Funeral Home pending resolution of the appellate process. Appellants bring two points on appeal from that judgment.

This Court's review of a judgment entered by the probate division of the circuit court is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Estate of Haan v. Haan*, 237 S.W.3d 231, 233 (Mo.App. S.D.2007). Accordingly, the

---

**3.** In addition to Shoemaker, Appleberry, the Reser Funeral Home, and the Benton County Coroner were also named as defendants.

**4.** The trial court did not elaborate on its reasons for reaching that conclusion. However, at one point early in the trial, the court did

comment from the bench, "[I]t does Isay the power of attorney becomes effective when two physicians certify on incapacitated and unable to communicate health care choices. I'm kind of thinking the coroner saying this person's dead probably takes the place of that."

judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "We defer to the trial court's findings of fact because of its superior ability to assess the credibility of witnesses. We review questions of law *de novo.*" *Hoit v. Rankin,* 320 S.W.3d 761, 765 (Mo.App. W.D.2010) (internal citation omitted).

In their first point, Appellants contend that the probate court erred in concluding that the durable power of attorney had gone into effect because it was undisputed that no physician had ever certified that Collins was incapacitated. Respondents concede that Collins was never certified as incapacitated by a physician but argue that death conclusively establishes incapacity sufficiently that no physician certification should be required. They further maintain that the physician certification requirement was only meant to apply to the powers related to health care decisions and not to the right of sepulcher conveyed thereby.

Section 194.119.1 [5] defines the "right of sepulcher" as "the right to choose and control the burial, cremation, or other final disposition of a dead human body." Section 194.119.3 provides that "[t]he next-of-kin of the deceased shall be entitled to control the final disposition of the remains of any dead human being." Section 194.119.2 defines "next-of-kin" by providing a hierarchical list of persons entitled to exercise the right of sepulcher in all cases relating to the custody, control, and disposition of deceased human remains. At the top of that list is "[a]n attorney in fact designated in a durable power of attorney wherein the deceased specifically granted the right of sepulcher over his or her body to such attorney in fact." § 194.119.2(1). Surviving children of the deceased are fur-

ther down the list. *See* § 194.119.2(4). Thus, if a power of attorney effectively grants the right of sepulcher to an attorney in fact designated in a valid durable power of attorney, the attorney in fact is considered the next-of-kin and has priority in exercising those rights.

At this point, a bit of clarification is in order regarding the power of attorney signed by Collins. A "durable power of attorney" is essentially one that does not terminate in the event the principal becomes disabled or incapacitated. § 404.703(4), RSMo 2000. They generally are authorized by, and must be in compliance with, the Durable Power of Attorney Law of Missouri ("DPALM"), §§ 404.700–404.735. Section 404.710.6(8) of the DPALM provides that a power of attorney, if expressly stated therein, can grant the attorney in fact the right to exercise the right of sepulcher over the principal's body under § 194.119. Such authority is not terminated by the death of the principal. § 404.717.1(4), RSMo 2000.

Missouri also has a separate Durable Power of Attorney for Health Care Act ("DPAHCA"), §§ 404.800–404.865. The DPAHCA, as its name implies, provides for a more specific variation of a durable power of attorney, one that permits the attorney in fact to generally make health care decisions for the principal. Nevertheless, there is overlap between the DPALM and DPAHCA in that § 404.810 of the DPAHCA makes certain provisions in the DPALM applicable to the Health Care Act, providing:

> Section 404.710, section 404.714, section 404.705, subsections 1 and 2 of section 404.707, section 404.717, subsection 1 and 2 of section 404.723, section 404.727, and section 404.731 shall apply to powers granted under sections 404.800 to

---

5. All statutory references are to RSMo Cum. Supp.2011 unless otherwise noted.

404.865. No other provisions of sections 404.700 to 404.735 shall apply to the durable power of attorney for health care act unless specifically incorporated by reference therein.

As noted, *supra*, the document at issue in the instant appeal is a Durable Power of Attorney for Health Care drafted and executed pursuant to the DPAHCA. Nevertheless, because § 404.810 makes § 404.710, and more specifically § 404.710.6(8) relating to the right of sepulcher, applicable to powers granted under the DPAHCA, if the power of attorney signed by Collins was operative and effectively granted the right of sepulcher to Shoemaker, she would be the next-of-kin pursuant to § 194.119.4 and have priority in exercising those rights.

Section 404.714.8 provides, however, that "[a]n attorney in fact may be instructed in a power of attorney that the authority granted shall not be exercised until, or shall terminate on, the happening of a future event, condition or contingency, as determined in a manner prescribed in the instrument." The durable power of attorney in the case at bar expressly states that it only becomes effective after a physician has certified that Collins is incapacitated and unable to make and communicate health care choices.[6]

■ Certainly, as noted by Respondents, the Durable Power of Attorney for Health Care Act only requires a physician's certification of incapacity before the attorney in fact may commence making health care decisions for the individual executing that power of attorney.[7] § 404.825, RSMo 2000. Accordingly, Collins could have, without violating any statute, executed a power of attorney granting the right of sepulcher to Shoemaker without the inclusion of that, or any other, condition precedent for the conveyance of that right. *See* §§ 194.119.4 & 404.710.6(8). The clear, unambiguous language of the durable power of attorney executed by Collins, however, expressly provides that none of its provisions become effective until the physician certification requirement is satisfied.[8]

■ In arguing that a different conclusion is warranted, Respondents rely upon testimony at trial indicating that Collins wished to be cremated and not buried and that Collins's reason for executing this

6. Section 404.805(2), RSMo 2000, defines "incapacitated" as "a person who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness or disease is likely to occur."

7. Section 404.825, RSMo 2000 entitled "Examination of the patient required," provides: Unless the patient expressly authorizes otherwise in the power of attorney, the powers and duties of the attorney in fact to make health care decisions shall commence upon a certification by two licensed physicians based upon an examination of the patient that the patient is incapacitated and will continue to be incapacitated for the period of time during which treatment decisions will be required an the powers and duties shall ceased upon certification that he patient is no longer incapacitated.... The determination of incapacity shall be periodically reviewed by the attending physician. The certification shall be incorporated into the medical records and shall set forth the facts upon which the determination of incapacity is based and the expected duration of the incapacity. Other provisions of this section to the contrary notwithstanding, certification of incapacity by at least one physician is required.

8. "Whether a document is ambiguous and the interpretation of the document itself are questions of law subject to *de novo* review." *Stonebrook Estates, LLC v. Greene Cnty.*, 275 S.W.3d 353, 355 (Mo.App. S.D.2008).

power of attorney was to give Shoemaker the authority to make sure she was cremated. They ask for the durable power of attorney to be interpreted in a manner that would effectuate Collins's wishes. Any consideration of such evidence, however, would be contrary to the parol evidence rule. "Absent ambiguity the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence." *Blue Ridge Bank & Trust Co. v. American Ass'n of Orthodontists Foundation,* 106 S.W.3d 543, 549 (Mo.App. W.D.2003) (internal quotation omitted). Extrinsic evidence "is not admissible to vary, add, or contradict terms of an unambiguous and complete written document." *Don King Equip. Co. v. Double D Tractor Parts, Inc.,* 115 S.W.3d 363, 372 (Mo.App. S.D. 2003) (internal quotation omitted). "The parol evidence rule is not a rule of evidence; it is a rule of law. If evidence is received, with or without objection, it violates the parol evidence rule and the decision must be made solely on the writing; parol evidence may not be considered." *Id.* (internal quotation omitted).

While Respondents claim that a death can be diagnosed by a layperson and that a certificate of death from a non-physician should be sufficient to satisfy the certification of incapacity by a physician requirement of the durable power of attorney, a death certificate from a non-physician coroner is simply not the same thing as a physician's certification of incapacity. Had Collins wished to establish a different condition precedent for the grant of the right of sepulcher or to have no condition precedent for the conveyance of that right, such provisions could easily have been written into the power of attorney. They were not.

Because the requisite condition precedent in the durable power of attorney was never satisfied, none of the powers granted therein ever vested in Shoemaker. Accordingly, the probate court erred as a matter of law in concluding that Shoemaker had the right of sepulcher pursuant to that document. The judgment is, therefore, reversed, and the cause is remanded to the probate court for further proceedings consistent with this opinion.[9]

All concur.

9. Having reached this conclusion, we need not address Appellants' remaining point relied on, wherein they claim the judgment should be reversed because oral comments made by the probate court in announcing its decision establish that the court improperly, *sua sponte* considered material from the Missouri Attorney General's website, including instructions for an identically worded durable power of attorney for health care, which was not admitted into evidence or part of the record before the court.