

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| C.A.B., JR., S.C.B., AND S.M.S. BY AND THROUGH THEIR NEXT FRIEND G.W.B., | ) | No. ED111188 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Respondents, | ) | of St. Louis County |
| | ) | |
| vs. | ) | Honorable John N. Borbonus |
| | ) | |
| KENDRA PERPICH, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KAITLIN N. BOSTER, | ) ) ) ) | |
| | ) | |
| Appellant. | ) | FILED: January 16, 2024 |

### Introduction

This appeal arises from a dispute over who is entitled to the cremated remains of Kaitlin Boster ("Decedent"). Her three minor children, through their next friend, G.W.B., (collectively, "Petitioners") brought this declaratory judgment action alleging that the children were entitled to Decedent's remains and asserting that a health care power of attorney purporting to give Decedent's mother, Kendra Perpich, the right to control disposition of Decedent's remains was invalid, ineffective, or inapplicable. The trial court entered summary judgment in favor of Petitioners and ordered the funeral home in possession of Decedent's remains to deliver them to Petitioners. The petition also alleged the children were entitled to the personal property of Decedent that was in the funeral home's possession. Perpich attempted to intervene in her capacity

as the personal representative of Decedent's estate in order to protect that property.  In its judgment, the trial court ordered the property to be delivered to the estate via the personal representative.  The trial court denied the motion to intervene.

Perpich appeals, claiming the trial court erred in entering summary judgment in favor of Petitioners and in denying the motion to intervene.  Because Petitioners did not demonstrate they were entitled to judgment as a matter of law declaring the children's right to Decedent's remains, we reverse and remand for further proceedings.  We also conclude the intervention issue is moot because there is no longer a justiciable controversy involving Decedent's personal property.

### Factual and Procedural Background

Decedent died in January 2021 in Missouri.  She was unmarried and was survived by her parents and her three minor children.  After her death, her father, G.W.B., had Decedent's body delivered to a funeral home for cremation.  G.W.B. believed that Decedent's children had the right of sepulcher, meaning "the right to choose and control the burial, cremation, or other final disposition of" Decedent's body, pursuant to section 194.119.1.[1]  That statute prioritizes the sepulcher rights of a decedent's next-of-kin, but gives first priority to "[a]n attorney in fact designated in a durable power of attorney wherein the deceased specifically granted the right of sepulcher over his or her body to such attorney in fact."  Section 194.119.2(1).  Surviving children are further down the statute's priority list.  Section 194.119.2(4).  Perpich asserted that she was Decedent's attorney in fact—and her rights trumped those of the children—because she was granted the right of sepulcher by a durable health care power of attorney ("HCPA") executed by Decedent in July 2019 in Arizona.[2]

---

[1] Unless otherwise noted, all statutory references are to RSMo (2016).
[2] Although the parties dispute Decedent's state of residence at other times, it is undisputed that she resided in Arizona in July 2019.  There is also no dispute that the HCPA is durable.

The HCPA, which was explicitly made under section 36-3221 of the Arizona Revised Statutes, designated Perpich as Decedent's agent "for all matters relating to [her] health care, including, without limitation, full power to give or refuse consent to all medical, surgical, hospital and related health care, including the provision of life-sustaining treatment and artificially administered food and fluids." The HCPA provided that the power of attorney was effective upon Decedent's "inability to make or communicate health care decisions." It also granted Perpich the authority to carry out Decedent's funeral and burial disposition wishes—specifically, that her body be cremated and her remains put into the ocean—"in accordance with this power of attorney, which is effective upon my death." The HCPA was signed by "Kaitlin Boster" and also contained the signature of a witness who stated he was "present when Kaitlin Boster signed" the HCPA and that she appeared at that time to be of sound mind and under no duress.

The funeral home cremated Decedent's remains in March 2021. Petitioners then filed this lawsuit, naming the funeral home and Perpich as defendants and seeking a declaration of the parties' rights. The petition challenged the validity of the HCPA, alleging that Decedent's signature was "spurious" and asserting that the HCPA contained "questionable items"— specifically, that the state abbreviation for Perpich's address was incorrect, there was no street address for Decedent, and the witness's address was inconsistent with the address listed in Decedent's will, which he also witnessed the same day. Petitioners further alleged that the HCPA never became effective because, prior to her death, Decedent was not unable to make or communicate health care decisions. Petitioners sought a judgment ordering the funeral home to deliver to the children Decedent's remains and her personal property in its possession.

Petitioners filed a motion for summary judgment. They contended that, "assuming arguendo" that the HCPA was valid, it never became effective and, even if it was valid and

effective, the HCPA was created pursuant to an Arizona statute that applied only to Arizona funeral homes with regard to cremation. After the summary judgment record was complete, the trial court entered an order granting the motion for summary judgment without explanation. Perpich filed a motion to vacate or modify that order, claiming that it was wrongly decided and also that it lacked a necessary party, namely Perpich in her capacity as the personal representative of Decedent's estate.[3] Perpich contemporaneously filed a motion to intervene in that capacity as a matter of right pursuant to Rule 52.12(a),[4] alleging that the personal representative had an interest in protecting the property of the estate that was the subject of the litigation and in having the HCPA declared valid. Following a hearing, the trial court entered summary judgment in favor of Petitioners and ordered the funeral home to deliver Decedent's remains to the children via their next friend. The judgment also ordered the funeral home to deliver Decedent's personal property to "the estate of the decedent via its personal representative." In a separate order and judgment entered a few weeks later, the trial court denied Perpich's motion to vacate or modify and her motion to intervene. This appeal follows.

## Discussion

### Point I – Summary Judgment as to the Disposition of Decedent's Remains

In her first point on appeal, Perpich challenges the trial court's entry of summary judgment in favor of Petitioners, asserting that they failed to show they were entitled to judgment as a matter of law as to the disposition of Decedent's remains because the HCPA granted Perpich the authority to carry out Decedent's wish that her remains be put into the ocean. Perpich also contends that,

---

[3] Perpich was designated as the personal representative of Decedent's estate in the will executed in Arizona on the same date as the HCPA. There is no challenge in this case to the validity of the will.

[4] All rule references are to the Missouri Supreme Court Rules (2022).

4

even if Petitioners "controverted the legitimacy of [the HCPA,] that controversy concerning a material fact precluded the entry of summary judgment."

Appellate review of a summary judgment is de novo. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We "review the record in the light most favorable to the party against whom summary judgment was entered." *Id.* (citations omitted). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 380. A claimant can establish a right to summary judgment by showing there is no genuine dispute as to those material facts upon which the claimant would have the burden of persuasion at trial. *Id.* at 381.

Here, as claimants, Petitioners sought a declaration that the children were entitled to Decedent's remains under the right-of-sepulcher statute because no one had a superior right. To succeed and prove entitlement to judgment as a matter of law, they had to defeat the existence of Perpich's claimed superior right as attorney in fact under the HCPA. Petitioners attempted to do so by showing that the undisputed facts demonstrated the HCPA was invalid, ineffective, or inapplicable. We agree with Perpich that Petitioners failed to meet this burden and that the trial court erred in entering summary judgment in their favor.

*Validity of the HCPA*

In their appellate brief, Petitioners contend summary judgment was appropriate because the HCPA was not valid. As noted, however, Petitioners' motion for summary judgment did not itself challenge the validity of the HCPA; rather, the motion contended that, "assuming arguendo" the HCPA was valid, it never became effective and was otherwise inapplicable. Although Petitioners' statement of uncontroverted material facts referred to the HCPA as a "purported" power of attorney, it did not cite anything in support of its alleged invalidity. In fact, the only

5

assertions regarding the validity of the HCPA in the summary judgment record were contained in Petitioners' response to Perpich's additional material facts in which Petitioners denied the validity of the HCPA and listed the "questionable items" alleged in the petition, but did not include supporting references to discovery, exhibits, or affidavits as required by Rule 74.04(c)(3).

Some of the allegedly questionable aspects of the HCPA are evident on the face of that document or other material that was part of the summary judgment record, although Petitioners were still required to specifically reference those materials to comply with the rule. In any event, as Petitioners note, Perpich's address on the HCPA was listed as being in "AR" instead of "AZ" for Arizona; there was no street address listed for Decedent, only the city, county, and state; and the witness who signed the HCPA and the will listed different addresses on each document. But even if these facts are undisputed, Petitioners failed to show they are *material* to the validity of the HCPA or otherwise demonstrate Petitioners' entitlement to judgment as a matter of law. *See* Rule 74.04. "A material fact in the context of summary judgment is one from which the right to judgment flows." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (internal quotation marks and citation omitted). As to Decedent's signature, Petitioners asserted in their response to Perpich's statement of additional material facts that the signature appeared to be "spurious" based on "careful examination of several facets of the signature including line quality, speed, letter formations, height relationships, and size when compared for instance to [Decedent's] signature on her Missouri Non-Driver Identification Card issued October 22, 2020[.]" On its face, this was not an assertion of *fact* showing that the signature is inauthentic; rather, it was a speculative suggestion about what someone might conclude about the authenticity of that signature. Moreover, Petitioners did not even assert—with the required references to discovery,

6

exhibits, or affidavits—that anyone qualified to compare the facets of a signature had actually conducted such an examination or reached any conclusions.

In their brief on appeal, Petitioners raise another basis for finding the HCPA invalid: It was not "affirmed" by the witness as required by Arizona law because the witness did not use the word "affirm" before signing the document. The witness's signature followed these paragraphs:

STATEMENT OF WITNESS

I am an adult, and I was present when Kaitlin Boster signed (or marked) this [HCPA]. Kaitlin Boster appeared to be of sound mind and free from duress at the time of signing. I am not designated as agent or alternate agent by this document to make medical decisions on Kaitlin Boster's behalf, and I am not a person directly involved with the provision of health care to Kaitlin Boster at the time this [HCPA] was signed by Kaitlin Boster.

I am not related to Kaitlin Boster by blood, marriage or adoption and to the best of my knowledge, I am not entitled to any part of Kaitlin Boster's estate by will or by operation of law at the time this [HCPA] was signed by Kaitlin Boster.

The applicable Arizona statute requires HCPAs to be "witnessed in writing by at least one adult who affirms that the . . . witness was present when the person dated and signed or marked the [HCPA] . . . and that the person appeared to be of sound mind and free from duress at the time of execution of the [HCPA]." ARIZ. REV. STAT. ANN. section 36-3221 (2009). Contrary to Petitioners' argument, nothing in the plain language of this statute requires that the witness use the word "affirm" or any particular language when signing an HCPA. In fact, section 36-3224 expressly states that "[a]ny writing that meets the requirements of [section] 36-3221 may be used" and provides a sample form for preparing an HCPA that contains *no verbiage* accompanying the witness's signature, much less the word "affirm." ARIZ. REV. STAT. ANN. section 36-3224 (2007) (noting as well that existence of the sample form "does not prevent a person from using other language or another form"). Nor, as Petitioners contend, does the HCPA form provided by the Arizona attorney general's office *mandate* use of the word "affirm." Even putting aside the fact

that Petitioners provide no authority showing the attorney general can mandate certain language be used in HCPAs, the form's mere use of the phrase "I affirm" does not equate to a direction that HCPAs must include that specific wording.

*Effectiveness of the HCPA*

Petitioners also contend that, even if the HCPA was valid, the condition necessary to trigger its effectiveness—Decedent's "inability to make or communicate health care decisions"—never occurred. But the power to make health care decisions under the HCPA is entirely separate from the power it granted to make decisions regarding the disposition of Decedent's remains. The Arizona statute authorizes a person to designate another person "to make health care decisions on that person's behalf *or* to provide funeral and burial arrangements in the event of the person's death[.]" ARIZ. REV. STAT. ANN. section 36-3221 (emphasis added). Decedent followed the format and verbiage suggested by the Arizona legislature for an HCPA that made both of those designations. *See* ARIZ. REV. STAT. ANN. section 36-3224. The plain and unambiguous language of Decedent's HCPA made it clear that disposition duties were distinct from health care decisions and were triggered by a different condition precedent:

> 3. FUNERAL AND BURIAL DISPOSITION
>
> My agent has authority to carry out all matters relating to my funeral and burial disposition wishes in accordance with this power of attorney, which is *effective upon my death*.

(Emphasis added).

Petitioners ignore this provision and the "effective upon my death" language therein and rely solely on *In re Estate of Collins*, 405 S.W.3d 602 (Mo. App. W.D. 2013). The HCPA in that case was governed by Missouri law, not an Arizona statute, and did not contain any similar "effective upon my death" language accompanying the right-of-sepulcher provision. Instead, the

8

HCPA in that case provided that it became effective when a physician certified the principal was "incapacitated and unable to make and communicate health care choices." *Id*. at 603. The HCPA in *Estate of Collins* also went on "to state that, when effective, [the] agent would have the power to: . . . '[c]arry out [the principal's] wishes regarding autopsy and organ donation, and decide what should be done with [the principal's] body.'" *Id*. at 603-04. The court held that "[t]he clear, unambiguous language" of the power of attorney "expressly provides that *none* of its provisions become effective until the physician certification requirement is satisfied." *Id*. at 606 (emphasis added). The court acknowledged that the principal could have established a different condition precedent for the right of sepulcher or imposed no condition precedent on that right, but did not do so. *Id*. at 607. Here, however, Decedent specifically made the right-of-sepulcher provision effective upon her death.

*Application of the HCPA*

Petitioners also contend that—even if the HCPA was valid and effective—it only authorized Perpich to carry out her duties regarding sepulcher at an Arizona funeral home. They assert that section 36-3221 of the Arizona statutes relates only to funeral homes in Arizona with regard to cremation and "is not applicable in the hierarchy" set forth in the Missouri right-of-sepulcher statute. This argument is without merit. Petitioners cite to no language in the Arizona statute or the relevant Missouri statutes to support this argument, and there is none. Indeed, Petitioners' only cited "authority" are excerpts of Perpich's testimony and the trial judge's statements at hearings in Arizona, neither of which reference section 36-3221, the statute under which this HCPA was made. The trial judge stated that "after reviewing the statutes" cited in *Matter of Ghostley*, 458 P.3d 116, 119 (Ariz. Ct. App. 2020)—a case that did *not* discuss section 36-3221—he concluded that *those* statutes were "specifically related to funeral homes in Arizona."

9

In any event, and with all due respect, these statements do not constitute either binding or persuasive precedential authority in this case.

Missouri's right-of-sepulcher statute requires only that the attorney in fact be "designated in a durable power of attorney wherein the deceased specifically granted the right of sepulcher over his or her body to such attorney in fact." Section 194.119.2(1). The HCPA in this case granted that right to Perpich. The fact that the HCPA was executed by a principal residing in another state is of no consequence because Missouri law expressly permits an agent to carry out "*in this state* all acts permitted to be delegated to an agent by the laws of the state of the residence of the principal, the laws of the state where the power of attorney is executed, or the laws of this state, whichever law is most favorable toward authorizing such delegation." Section 404.730.6. There is no question that both Arizona—the principal's residence at the time and where the HCPA was executed—and Missouri permit the particular act delegated here, namely, disposition of a decedent's remains. *See* ARIZ. REV. STAT. ANN. section 36-3221 (expressly authorizing delegation of "funeral and disposition arrangements in the event of the person's death by executing a written health care power of attorney"); section 404.710.6(8) (providing that a power of attorney may grant the authority "to exercise the right of sepulcher over the principal's body under section 194.119"); *see also Estate of Collins,* 405 S.W.3d at 606 (recognizing that section 404.810 makes section 404.710.6(8) applicable to health care powers of attorney).

In sum, the facts in this summary judgment record and the legal arguments presented by Petitioners do not support the conclusion that the HCPA is invalid, ineffective, or inapplicable. Therefore, Petitioners did not demonstrate they were entitled to judgment as a matter of law declaring that the children's rights of sepulcher were superior to Perpich's. The trial court erred in granting Petitioners' motion for summary judgment. Point I is granted.

10

**Point II – Motion to Intervene**

In her second point on appeal, Perpich contends the trial court erred in denying her motion to intervene as a matter of right in her capacity as the personal representative of Decedent's estate. We deny this point as moot because there is no longer a justiciable controversy involving Decedent's personal property.

Rule 52.12(a), which governs intervention as a matter of right, provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Perpich argues that her motion to intervene was timely filed prior to a final judgment and demonstrated that the personal representative had an interest in protecting the personal property of the estate at issue in this declaratory judgment action in which Petitioners sought property in the funeral home's possession. According to Perpich, intervention was required because disposition of Petitioners' claim to the property would impede the personal representative's ability to protect the estate's interest in it, and that she could not adequately protect that interest in her individual capacity.

Even if we agreed that Perpich demonstrated a right to intervene at the time the motion was filed, the issue is now moot. Mootness is a threshold question to appellate review of a trial court's ruling, which is answered by considering whether events since that ruling have had an impact on the justiciability of the controversy. *See generally D.C.M. v. Pemiscot Cnty. Juv. Officer*, 578 S.W.3d 776, 780 (Mo. banc 2019). Justiciability requires "a real, substantial, presently existing controversy which is admitting of specific relief." *Thruston v. Jefferson City Sch. Dist.*, 95 S.W.3d 131, 134 (Mo. App. W.D. 2003) (internal quotation marks and citation omitted). "A case becomes

11

moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Id*. (internal quotation marks and citation omitted). An appellate court's role is to "resolve live disputes." *In re Sw. Bell Tel. Co.'s Proposed Revision to Gen. Exch. Tariff, P.S.C. MO-No. 35*, 18 S.W.3d 575, 577 (Mo. App. W.D. 2000). If there is no existing controversy at the time of the appeal, then the issue is moot and the court will not issue an opinion on a "past dispute." *Id*. (finding that plan on which the motion to intervene was based had expired, which rendered moot an appeal of denial of that motion); *see also State v. Lieurance*, 780 S.W.2d 692, 696 (Mo. App. S.D. 1989).

Here, there is no longer any "real, substantial, presently existing controversy" involving Decedent's personal property. In its judgment, the trial court ordered the funeral home to deliver "the personal property to the estate of the decedent's estate via its personal representative." No one has appealed that aspect of the judgment. Thus, the debate over who is entitled to possession of Decedent's personal property in the funeral home's possession has been resolved. There being no existing controversy over the personal property, the question of Perpich's right to intervene as personal representative in order to protect that property is moot.

Perpich contends the issue is not moot because, had she been permitted to intervene, she would have sought a discovery of assets in the funeral home's possession. The proposed third-party petition attached to her motion to intervene prayed that the trial court "discover the personal property belonging to the Decedent, determine the title and right of possession thereto [and] direct the delivery or transfer of said property to the Personal Representative of Decedent's estate." Perpich asserts there is still an active controversy in which to intervene because the personal representative is entitled to a determination of what is in the funeral home's possession. But based

12

on her own affidavit in the summary judgment record, Perpich is already aware that Decedent's "only possessions" at the time of her death were her clothing, a hair tie, a ring, a necklace, and a bracelet. Thus, there is no real or substantial or existing controversy over what is in the funeral home's possession. And even if there were such a controversy, the personal representative would not have the right to intervene in this case to resolve it because disposition of this action does not "as a practical matter impair or impede" her ability to protect her interest in accounting for all of the assets of Decedent's estate. *See* Rule 52.12(a)(2). The disposition here—ordering the personal property in the funeral home's possession to be delivered to the estate—does not impact the personal representative's ability to file a statutory discovery of assets action in the probate division of the circuit court if she is concerned that the funeral home has "adversely withheld" property belonging to the estate. Section 473.340.1. Point II is denied as moot.

## Conclusion

For the foregoing reasons, the judgment is reversed to the extent it orders Decedent's remains to be delivered to Petitioners. The case is remanded to the trial court for further proceedings consistent with this opinion.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.

13