

*In the*

*Missouri Court of Appeals*

*Western District*

IN THE ESTATE OF KEVIN N.
MERRITT, DECEASED, BY AND
THROUGH ITS DULY APPOINTED
PERSONAL REPRESENTATIVE,
MONIQUE MERRITT,

    Respondent,

v.

REBECCA L. WACHTER,

    Appellant,

FIDELITY BROKERAGE SERVICES,
LLC.,

    Respondent.

WD76581

OPINION FILED:

APRIL 29, 2014

**Appeal from the Circuit Court of Platte County, Missouri
The Honorable James Walter Van Amburg, Judge**

**Before Division Three: Anthony Rex Gabbert, P.J.,
Victor C. Howard, Thomas H. Newton, JJ.**

Rebecca Wachter appeals the circuit court's judgment removing her as the beneficiary of her deceased ex-husband, Kevin N. Merritt's, rollover individual retirement account (Fidelity IRA) and substituting his estate as the beneficiary. Wachter asserts five points on appeal. First, she contends that the court erred in interpreting the Kansas Judgment Decree of Divorce and the corresponding Property Settlement Agreement between Wachter and Merritt by failing to interpret the Property Settlement Agreement pursuant to its Kansas choice of law provision.

Second, Wachter contends that the court erred in interpreting the Kansas divorce decree and property settlement agreement because the court failed to recognize the effect of K.S.A. 60-1610(b)(1), amended to K.S.A. 23-2802, and K.S.A. 59-610 because these statutory requirements render immaterial any unspecified intention of the parties and require the decedent's beneficiary designation be honored. Third, Wachter charges that the court erred by interpreting the Kansas divorce decree and corresponding property settlement agreement to revoke Merritt's beneficiary designation because the court failed to recognize the effect of Kansas law in that the divorce decree and property settlement lacked specific provisions for beneficiary designations for the Fidelity IRA and, therefore, the beneficiary designation on record must be upheld. Fourth, Wachter claims that the court erred in interpreting the Kansas divorce decree and property settlement and ordering Fidelity to revoke Merritt's beneficiary designation because Merritt had a statutory duty pursuant to K.S.A. 60-1610(b)(1), amended to K.S.A. 23-2802, to change the beneficiary and he failed to do so. Fifth, Wachter contends that the court erred in ordering Fidelity to revoke Merritt's beneficiary designation because the court failed to uphold the contract between Merritt and Fidelity which requires that an account holder's beneficiary designation be determined by the account owner and defined by the plan documents. We reverse.

The relevant facts in this case are that Merritt, during his lifetime, maintained an account titled Kevin N. Merritt-rollover IRA, an individual retirement account held by Fidelity Brokerage Services, LLC (Fidelity). On May 30, 1996, Merritt designated Wachter, his then wife, as the sole beneficiary of his Fidelity IRA. Merritt named no contingent beneficiaries. Merritt and Wachter divorced on May 8, 2000, and a Separation and Property Settlement Agreement was incorporated into the court's Decree of Divorce. The property agreement awarded the Fidelity

IRA to Merritt as his sole and separate property. Approximately 11 years after the divorce, Merritt died. At the time of his death on February 15, 2011, Wachter remained the sole beneficiary of Merritt's Fidelity IRA. In April of 2011, the probate division of the circuit court was petitioned to open Merritt's estate for administration. Thereafter, on August 2, 2011, the personal representatives of the estate (Estate) notified the court of the Estate's interest in late discovered assets, specifically the Fidelity IRA. The Estate filed a Petition for Discovery and Payover of Assets and Declaratory Judgment and named Wachter and Fidelity as defendants. The Estate acknowledged that Wachter remained the beneficiary of the Fidelity IRA at the time of Merritt's death, but cited Section 461.051, RSMo 2000, in support of revoking Wachter as the beneficiary. Section 461.051.1 provides:

> If, after an owner makes a beneficiary designation, the owner's marriage is dissolved or annulled, any provision of the beneficiary designation in favor of the owner's former spouse or a relative of the owner's former spouse is revoked on the date the marriage is dissolved or annulled, whether or not the beneficiary designation refers to marital status. The beneficiary designation shall be given effect as if the former spouse or relative of the former spouse had disclaimed the revoked provision.

The Estate also contended that, pursuant to the terms of the divorce decree and property settlement, the Fidelity IRA should be an asset of the Estate due to having been awarded to Merritt in the divorce.

Wachter filed an answer to the Estate's petition and claimed entitlement to the Fidelity IRA as the designated beneficiary. Wachter denied applicability of Section 461.051 due to the Fidelity IRA being governed by ERISA which was found to pre-empt automatic revocation statutes such as Section 461.051 in *Egelhoff v. Egelhoff ex rel. Breiner*, 121 S.Ct. 1322 (2001). Fidelity filed an answer to the Estate's petition and took no position as to the true beneficiary of the Fidelity IRA, but filed a Counterclaim and Cross-Claim in Interpleader requesting that the

3

court determine the rightful owner of the funds held in the Fidelity IRA and order disbursal of the funds to that rightful owner.

The circuit court heard evidence on April 26, 2013. At trial, the Estate presented two trial exhibits, the Kansas Divorce Decree and Property Settlement and Separation Agreement and records from Fidelity regarding Merritt's Fidelity IRA. The Estate called no witnesses but asked the court to take judicial notice that Wachter admitted that she was married to Merritt when Merritt designated her as the beneficiary of the Fidelity IRA. The Estate also asked the court to take judicial notice that Wachter admitted that she and Merritt later divorced but that Merritt never revoked or amended his beneficiary designation prior to his death. The Estate then cited *Estate of Kensinger v. URL Pharma, Inc., and Adele Kensinger*, 674 F.3d 131 (2012), and rested.

Wachter presented records from Fidelity at trial with no objection from the Estate. These records show, and the Estate acknowledges, that during Merritt's lifetime he requested change of beneficiary forms from Fidelity. Specifically, the records indicate that on January 24, 2004, Fidelity received a telephone call from Merritt wherein Merritt requested a Beneficiary Change Form and it was sent to Merritt by Fidelity. In that telephone call, Merritt also changed his address and telephone number with Fidelity and was informed of the balance on his account. The records indicate that, four years later, on April 30, 2008, Merritt telephoned Fidelity and Fidelity mailed Merritt a Beneficiary Change Form. The records indicate that, approximately one and a half years later, on November 12, 2009, Merritt telephoned Fidelity and he was directed on-line to change his address. Merritt was also sent an e-mail with a link to Fidelity.com's beneficiary change page. Approximately 15 months later, Merritt died.

Wachter also introduced, without objection, Fidelity's Mutual Fund IRA Summary Statement and Form 5498's for the years 1999 through 2011. Each form is addressed to Merritt

4

and contains a section titled "Fidelity IRA Beneficiary Confirmation." Each form clearly denotes Rebecca L. Merritt as the 100% beneficiary and has no contingent beneficiaries listed. These forms were produced by Fidelity yearly for tax reporting purposes.

Wachter used the Fidelity records at trial to argue that Merritt's failure to change his beneficiary designation, after requesting forms and being guided to Fidelity's website for on-line beneficiary changes, evidenced his intent to keep Wachter as the beneficiary. She argued that because Merritt used Fidelity's website to change his address, he could have just as easily changed his beneficiary if he intended to. Wachter also argued that Merritt had a motive for keeping her as the beneficiary. She contended that Merritt had secreted marital funds during the marriage and, upon Wachter's discovery of this during the divorce proceedings, Merritt told Wachter that he wanted her forgiveness and that he would make it up to her.

Wachter noted at trial that, by arguing applicability of the *Kensinger* case, the Estate conceded that ERISA pre-empts Section 461.051. She argued, however, that based on *Kensinger*, "[i]f this Court orders Fidelity to distribute the funds to me, if the Estate then wants to sue me under a contract law theory case, there needs to be a trial on a contract theory case."

On May 21, 2013 the court issued its Judgment and therein concluded:

[I]t was not the intention of the decedent to have his ex-wife remain as the beneficiary of his Fidelity monies and that the terms of the Property Settlement Agreement entered into at the time of the divorce [] demonstrates his desire for his wife to have no interest in that account of any kind.

The court ordered Fidelity to change the beneficiary designation on Merritt's Fidelity IRA from Wachter to the Estate. The court ordered the Estate to submit an application to open a Fidelity Inherited IRA Account and ordered Fidelity to transfer into the Inherited IRA the full amount of the funds maintained in Merritt's Fidelity IRA. The court ordered the Estate to pay Fidelity's

5

costs and attorney's fees in the amount of $5,387.32 from the proceeds of the Fidelity account. Wachter appeals.

In reviewing a court-tried case, we will affirm the decision of the trial court unless it is unsupported by substantial and competent evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Questions of interpretation and application of a contract are reviewed *de novo* as a matter of law. *Parshall v. Buetzer*, 195 S.W.3d 515, 519 (Mo. App. 2006).

We find Wachter's fifth point on appeal dispositive.[1] Therein, Wachter contends that the court erred in ordering Fidelity to revoke Merritt's beneficiary designation because the court failed to uphold the contract between Merritt and Fidelity which requires that an account holder's beneficiary designation be determined by the account owner and defined by the plan documents. Pursuant to the United States Supreme Court's holding in *Egelhoff*, we agree.

In *Egelhoff*, David Egelhoff designated his wife Donna as the beneficiary of a life insurance policy and pension plan, both governed by ERISA. 121 S.Ct. at 1326. The Egelhoffs subsequently divorced and two months after the divorce David died intestate following an automobile accident. *Id.* The proceeds of the insurance policy and pension plan were disbursed to Donna as the named beneficiary. *Id.* David's statutory heirs, children from a previous marriage, sued Donna to recover these proceeds. *Id.* They relied on a Washington statute, much like Missouri's Section 461.051, which, in short, automatically revokes a nonprobate beneficiary designation made to a former spouse if that designation was made prior to the divorce. *Id.* The Supreme Court of Washington held that ERISA does not pre-empt the Washington automatic revocation statute and that the heirs, and not Donna, were entitled to the proceeds. *Id.*

---

[1]As we find Wachter's fifth point dispositive, we do not address the merits of her other four claims.

The Supreme Court of the United States reversed. *Id.* at 1330. The Supreme Court noted the disagreement among lower courts as to whether such revocation statutes are pre-empted by ERISA, and settled the matter by concluding that, because the Washington statute directly conflicts with ERISA's requirements that plans be administered, and benefits paid, in accordance with plan documents, the statute is pre-empted by ERISA. *Id.* at 1327, 1329. The court reasoned that a principal goal of ERISA is to enable employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* at 1328 (citing *Fort Halifax Packing Co. v. Coyne*, 107 S.Ct. 2211 (1987)). The court noted that such uniformity is impossible if plan administrators cannot make payments by merely identifying the beneficiary and instead must become familiar with state statutes to determine if the beneficiary had been statutorily revoked. *Id.* The court stated that "[r]equiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators - burdens ultimately borne by the beneficiaries." *Id.* at 1329 (quoting *Ingersoll-Rand Co. v. McClendon*, 111 S.Ct. 478 (1990)).

We find *Egelhoff* controlling. Here, the parties do not dispute that the Fidelity IRA is governed by ERISA. On September 13, 2012, the Estate filed with a Motion for Summary Judgment a Legal Memorandum arguing that while ERISA may require the funds be distributed to the ex-wife, the Estate should be able to bring suit against the ex-wife to enforce a waiver based on *Kensinger*. In the Memorandum, the Estate contended for the first time that Wachter waived her rights to the Fidelity IRA in the property settlement agreement in the divorce.[2] The

---

[2]The Estate's petition did not allege waiver but that because Merritt was awarded the Fidelity IRA in the divorce, the proceeds were an asset of the estate.

7

Memorandum concluded that the court should enter an order directing the Interpleader to disburse the funds to Wachter, and order Wachter to immediately assign and transfer all of those funds to the Estate. At trial, Wachter denied waiving any beneficiary rights. While she admitted giving up any rights of inheritance, she maintained that Merritt always retained a right to designate whomever he desired as the beneficiary of his Fidelity account and the property settlement agreement is silent as to designation or waiver of beneficiary status. She further argued, however, that with regard to *Kensinger*, "[i]f this Court orders Fidelity to distribute the funds to me, if the Estate then wants to sue me under a contract law theory case, there needs to be a trial on a contract theory case."

The circuit court did not address *Egelhoff* or *Kensinger* in its Judgment. The circuit court concluded that the property settlement agreement that awarded Merritt the Fidelity IRA in the divorce evidenced Merritt's intent to not have his ex-wife remain as the beneficiary of his Fidelity monies.[3] The Estate argues that the court "had full authority" to determine the decedent's intentions as to the beneficiary pursuant to *Kensinger*. We disagree.

---

[3]The property settlement agreement states, in part, "That Husband shall have as his sole and separate property, free and clear of any right, title or interest in Wife: . . . b. Husband's Fidelity IRA and American Century Profit Sharing[.]" The agreement also generally states:

> Right to Separate Use of Assets. That all property and monies received or retained by the parties pursuant hereto shall be the separate property of the respective parties, free and clear of any right, title or interest in the other party, and each party shall have the right to deal with and dispose of his or her separate property as fully and effectively as if the parties had never married.

> Mutual Release of Marital Rights. That in consideration of the mutual releases contained in this paragraph, each of the parties . . . specifically relinquishes any right, title or interest in or to any of the earnings, accumulations, future investments, money or property of the other, any rights of inheritance in the estate of the other, which either may have heretofore, may now, or may hereafter have, except as otherwise provided in this Agreement, any rights to elect to take against the Will of the other, . . ., and any right to receive insurance proceeds as beneficiary on life insurance on the life of the other (unless after the date of this Agreement the insured takes an affirmative act to make or retain him or her as beneficiary), . . . .

Even if *Kensinger*, a case from the Third Circuit United States Court of Appeals, was binding on this court, the stated issue in *Kensinger* was "whether the Estate can sue [ex-wife] *after* the funds have been distributed to her" because the ex-wife had waived all claims as a beneficiary to the disputed funds. 674 F.3d at 138. In answer to that question, the *Kensinger* court concluded that the Estate could bring a post-distribution claim against the ex-wife and pursue a common law waiver claim. The court stated:

> In this case, when URL pays the benefits to [ex-wife], as it must, she will 'get what's coming' under the plan. If, after distribution, her right to these funds is challenged because of her common law waiver, that challenge will be litigated as an ordinary contract dispute. Accordingly, to the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against beneficiaries *after* benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA.

*Id.* 136-137. Thus, *Kensinger* does not dissolve a court's obligation to order distribution of the funds pursuant to the plan documents. To the contrary, *Kensinger* recognizes that the benefits "must" be distributed to the named beneficiary. *Id.* Here, it is uncontested that Wachter was the named beneficiary on the plan documents of the Fidelity IRA. Consequently, the court was obligated to order the proceeds of Merritt's Fidelity IRA be paid to Wachter. Further, we disagree with the Estate's suggestion that *Kensinger* allows the circuit court to sidestep the mandate of *Egelhoff* and move forward with a determination as to Merritt's intent with regard to the beneficiary.

First, *Kensinger* discussed the possibility of the ex-wife having contractually waived her rights to the proceeds of her deceased ex-husband's 401(k) plan. Here, the Estate's petition alleged that the Estate was entitled to the proceeds of the Fidelity IRA on two grounds: because Section 461.051 revoked Wachter as the beneficiary and because Merritt was awarded the Fidelity IRA in the divorce; the Estate did not plead a theory based on Wachter's purported

9

waiver of her beneficiary rights. While the Estate raised the issue of waiver in its motion for summary judgment, the circuit court did not base its Judgment on waiver or the two grounds the Estate set forth in its petition. The court based its Judgment on Merritt's intent. Because the intent of the maker of a legal instrument is generally to be ascertained from the four corners of the instrument without resorting to extrinsic evidence,[4] we cannot say that *Kensinger* stands for the proposition that an Estate may bring a suit against a named beneficiary on a theory of contrary intent. Contractual waiver and decedent intent require different legal inquiries and *Kensinger* only addressed the question of contractual waiver.[5]

Second, *Egelhoff* held that ERISA requires that plan administrators should, unencumbered by litigation, be able to disburse funds according to the plan documents. 121 S.Ct. at 1329. The Court determined that, because Washington's automatic revocation statute frustrated this purpose, it was pre-empted by ERISA. *Id.* Missouri's automatic revocation statute, Section 461.051.1, is substantially the same as Washington's in that it provides for automatic revocation of a beneficiary designation of an ex-spouse if that designation was made prior to divorce. Consequently, Section 461.051 is pre-empted by ERISA pursuant to *Egelhoff*. *Egelhoff* requires that the funds be disbursed to the named beneficiary and *Egelhoff* makes no suggestion that a court is entitled to conduct a parallel inquiry into the decedent's intent.

David Egelhoff passed away only two months after the divorce in which he was awarded a pension plan and life insurance policy that both still named his ex-wife as the beneficiary. *Id.* at 1326. He had two children from a previous marriage who were his statutory heirs and

---

[4]*Estate of Collins, In re*, 405 S.W.3d 602, 607 (Mo. App. 2013).

[5]We note that *Kensinger* merely stands for the proposition that heirs may bring a contractual waiver claim against a designated beneficiary and take no position on whether we support this proposition or whether any other claim, such as contrary intent, might be allowable post-distribution.

10

contingent beneficiaries. *Id.* The proceeds had already been disbursed to the ex-wife prior to the

Estate bringing its claim. *Id.* Yet, the court did not inquire into whether David Egelhoff might

have had a contrary intent with regard to his beneficiary designation due to having been freshly

awarded the benefits in a very recent divorce. Even the dissent in *Egelhoff* did not discuss the

potential actual intent of the decedent, but rather discussed the equity involved in allowing a

State's automatic revocation statute to assume the intent of a divorced decedent. *Id.* at 1334.

The dissent stated that "[t]he Washington statute transfers an employee's pension assets at death

to those individuals whom the worker would likely have wanted to receive them." *Id.* The

dissent complained that:

> In forbidding Washington to apply that assumption here, the Court permits a divorced wife, who *already* acquired, during the divorce proceeding, her fair share of the couple's community property, to receive in addition the benefits that the divorce court awarded to her former husband. To be more specific, Donna Egelhoff already received a business, an IRA account, and stock; David received, among other things, 100% of his pension benefits. David did not change the beneficiary designation in the pension plan or life insurance plan during the [] period between his divorce and his death. As a result, Donna will now receive a windfall of approximately $80,000 at the expense of David's children. The State of Washington enacted a statute to prevent precisely this kind of unfair result. But the Court, relying on an inconsequential administrative burden, concludes that Congress required it.

*Id.* The majority was unmoved.[6] As the *Egelhoff* majority refused to allow an assumption as to

David Egelhoff's intent based on his divorce, we find no support for the circuit court making an

---

[6]The Court was also unmoved that plan administrators in Washington were statutorily protected from liability for making payments to the named beneficiary unless they had actual knowledge of the dissolution or other invalidation of the marriage. *Egelhoff*, 121 S.Ct. 1328-1329. The Court indicated that administrators would still face the risk that a court might later find that they had actual knowledge of the divorce. *Id.* at 1329. Missouri has a similar statute, Section 461.067.4, RSMo 2000, which provides that "[a] nonprobate transfer that is improper because of the application of sections 461.045 to 461.059 shall impose no liability on the transferring entity if made honestly in good faith, regardless of any negligence in determining the proper transferees."

assumption as to Merritt's intent here. [7]

Third, as evidenced here, *Egelhoff's* concern with subjecting plan administrators to litigation, expense, and insecurity is not alleviated if parties are allowed to bring suit prior to disbursal of funds to the named beneficiary. Here, prior to disbursal of the Fidelity IRA funds to Wachter, the named beneficiary, the Estate filed a petition claiming an interest in the funds and named Fidelity, the plan administrator, a defendant. Consequently, Fidelity filed an answer to the Estate's claims and a counterclaim and cross-claim in interpleader indicating that Fidelity would abide by the court's directives with regard to the funds. The circuit court found in its Judgment that Fidelity had incurred costs and attorneys' fees in the amount of $5,387.32. Thus, by having the court address claims extraneous to the plan documents prior to disbursal of the funds, the plan administrator was subjected to the expense and insecurity that *Egelhoff* found ERISA to forbid. For the foregoing reasons, we hold that the circuit court erred in failing to order the Fidelity IRA proceeds be paid to Wachter, the named beneficiary of the Fidelity IRA. Wachter's fifth point on appeal is granted.

We conclude, therefore, that the circuit court erred in ordering Fidelity to revoke Merritt's beneficiary designation and in failing to order the proceeds distributed to Wachter as the named beneficiary of the Fidelity IRA. We reverse and remand with instructions to the circuit court to enter judgment in favor of Rebecca Wachter, consistent with our ruling today, including an appropriate award of costs and attorney's fees in light of this opinion. We take no position

---

[7]Arguably, with Egelhoff having just divorced prior to his death and having two contingent beneficiaries on his plan documents who were children from a previous marriage, the facts of *Egelhoff* would have made a more compelling case for considering the decedent's intent. Here, Merritt passed away nearly 11 years after his divorce and during that time requested change of beneficiary forms but never changed his beneficiary. It appears from the record that Merritt had no children and named no contingent beneficiaries in the Fidelity IRA plan documents.

concerning any remedies the Estate may have against Wachter subsequent to the disbursement of the IRA proceeds to her.

_____
Anthony Rex Gabbert, Judge

All concur.