

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

HOMEFIELD COMMONS HOMEOWNERS ASSOCIATION,

    Respondent,

vs.

ROY H. SMITH REAL ESTATE CO.,

    Appellant.

No. ED103858

Appeal from the Circuit Court
of St. Charles County

Honorable Norman C. Steimel, III

FILED: October 11, 2016

### Introduction

Appellant Roy H. Smith Real Estate Company, d/b/a Smith Management Group ("SMG"), appeals the judgment of the trial court entered after a bench trial. SMG entered into a one-year contract with respondent Homefield Commons Homeowners Association ("HCHOA") to provide property-management services. Section 4 of the parties' contract specified the method by which either party could terminate the contract for cause prior to its expiration. HCHOA contends that it properly terminated the contract pursuant to Section 4. Following a bench trial, the trial court agreed. Because the trial court erroneously applied the terms of the contract as required by law, we hold that HCHOA did not terminate the contract in conformance with the requirements of Section 4. We reverse the judgment of the trial court and remand this matter to the trial court with instructions to enter judgment in favor of SMG on HCHOA's petition; to

consider SMG's counterclaim and make the required factual findings; and to enter judgment on SMG's counterclaim in accordance with its finding of facts.

Factual and Procedural History

Homefield Commons is a subdivision of detached villas in St. Charles County. Homefield Commons is governed by a homeowners' association, respondent HCHOA, and is part of a larger real-estate development. The entire development is governed by a master homeowners' association, Homefield Master Homeowners Association ("Homefield Master"). In other words, Homefield Master controls the entire development, while the HCHOA subassociation only governs the Homefield Commons subdivision.

HCHOA entered into a valid contract with SMG to manage the Homefield Commons subdivision. The contract between HCHOA and SMG ran for the calendar year of 2014. Included in the contract was the following termination clause, contained in Section 4:

> [E]ither party may terminate this Agreement for cause by the dissatisfied party giving the other party written notice of the concerns, along with a written list or matters on which said dissatisfaction is based. The dissatisfied party will allow the other party thirty (30) days to rectify and address such concerns. If the dissatisfied party is still not satisfied with the management relationship thereafter, said dissatisfied party shall give the other party written notice terminating this Management Agreement for cause effective thirty (30) days from the date of said written notice.

In a letter to SMG dated March 29, 2014,[1] HCHOA wrote, "Pursuant to [Section] 4 of our Management Agreement, 30 day notice is hereby given to terminate the agreement." The letter asserted that SMG's management of both Homefield Master[2] and HCHOA created a conflict of interest. This conflict allowed HCHOA's issues "to go unaddressed or ignored" because the SMG property manager followed the direction of Homefield Master rather than

---

[1] All dates occurred in 2014, so we will omit the year in the remainder of the opinion.
[2] SMG and Homefield Master were parties to a separate contract for property-management services.

2

HCHOA. The letter identified two issues that illustrated the conflict problem, "the Trash Can Screening issue and the Solar Panel issue," but lacked any specificity regarding those issues. However, with both issues, HCHOA alleged that it had given specific directions to an SMG property manager and those directions were ignored. The letter concluded that a "person cannot have two masters and therefore we respectfully wish to terminate our management agreement with [SMG]." Although the letter was dated in March, the trial court found that SMG did not receive the letter until April 23.

SMG responded by letter dated April 28. In its letter, SMG expressed disappointment that HCHOA would want to terminate the agreement and stated it was confident it could "correct and/or explain the issues if given the opportunity." The letter also declared SMG's position that HCHOA had not followed the proper procedure under Section 4 to terminate the agreement. Specifically, SMG expressed that the concerns listed were vague or inaccurate, and that the termination letter did not allow SMG the requisite thirty days to rectify HCHOA's concerns.

SMG sent another letter dated May 5. The letter provided notice that SMG was appointing a new manager for HCHOA. This new manager, SMG stated, would follow all of SMG's operational procedures. Nothing in SMG's letter acknowledged HCHOA's claim that a conflict of interest existed.

HCHOA responded by letter dated May 6 rejecting SMG's appointment of a manager as a solution to the conflict of interest. HCHOA reiterated its complaint about the perceived conflict of interest and its desire to terminate the contract. HCHOA emphasized that the termination letter to SMG dated March 29 would "stand" because SMG's efforts to rectify the conflict of interest were not acceptable. In its letter, HCHOA instructed SMG to transition all files associated with HCHOA to another management company.

3

When SMG did not transfer the files to another management company, HCHOA sent an email to SMG on May 21 repeating HCHOA's termination of the contract, and again directing SMG to transfer all files to the new management company.

Despite HCHOA's communications, SMG continued to collect its management fees from HCHOA—at the contractual rate of $2,385 per month—from HCHOA's bank account[3] for June, July, and August. In September, HCHOA closed the bank account accessible to SMG, and SMG then transferred management of Homefield Commons to another management company.

HCHOA filed suit against SMG to recover the amounts paid to SMG after the contract was purportedly terminated. SMG filed a counterclaim, alleging that HCHOA had not properly terminated the contract under Section 4, and that HCHOA had breached the parties' contract by transferring its business to another management company before the contract expired. SMG sought damages for management fees due through the remainder of the contract (September through December) and for various unreimbursed expenses incurred while managing the property.

After a bench trial, the trial court issued a judgment in favor of HCHOA on both its petition and SMG's counterclaim. The trial court interpreted Section 4 (the termination provision) as a three-step process: (1) a written complaint, (2) thirty days to cure, and (3) thirty-days written notice to terminate. The trial court found that the March 29 letter satisfied the written-complaint condition. The trial court addressed the second condition by noting that SMG's response to the March 29 letter ignored HCHOA's concerns regarding SMG's conflict of interest. The trial court did not mention in its judgment SMG's May 5 letter stating that it was appointing a new manager, but found that HCHOA's May 6 letter fulfilled the third and final

---

[3] Section 6 of the contract authorized SMG to maintain a bank account with HCHOA's funds.

4

condition because HCHOA advised SMG that it still wished to terminate the contract. The trial court allowed three days for delivery of the May 6 letter, finding that HCHOA met the conditions to terminate the contract for cause on May 9, and that the contract terminated thirty days later under Section 4. The trial court found that SMG was entitled to collect management fees in June because the contract did not terminate until the middle of the month, but that SMG was not entitled to the fees it collected from HCHOA for July and August. Thus, the trial court awarded HCHOA $4,686.16, representing SMG's fees collected in July and August minus $83.84 in expenses[4] that benefitted HCHOA. The trial court also concluded that its ruling on the termination of the contract effectively defeated SMG's counterclaim. This appeal follows.

## Points on Appeal

SMG raises three points on appeal. First, SMG argues that the trial court erred in finding that HCHOA properly terminated the parties' contract. Specifically, SMG contends that HCHOA did not give proper written notice of its concerns under the contract and did not allow SMG thirty days to rectify those concerns. Second, SMG asserts trial-court error in awarding damages to HCHOA because SMG provided management services in July and August from which HCHOA benefitted; thus, awarding damages for July and August gave HCHOA a windfall. Third, SMG claims that the trial court improperly denied SMG's counterclaim for damages on the entire contract. This argument is an extension of the first point: HCHOA remained liable on the entire contract because it did not properly terminate under Section 4.

## Standard of Review

We review court-tried cases under the Murphy v. Carron standard. 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will be upheld unless there is no substantial

---

[4] These expenses incurred by SMG included $20 for annual registration with the Missouri Secretary of State; $37.05 for copies, postage, and reproduction; and $26.79 for merchant services.

5

evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Id. We review questions of law, including the interpretation and application of contracts, de novo. Estate of Merrit ex rel. Merritt v. Wachter, 428 S.W.3d 738, 742 (Mo. App. W.D. 2014). However, when "the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010).

## Discussion

In Point One, SMG argues the trial court misapplied Section 4 of the parties' contract, which provides for termination of the contract. Specifically, SMG asserts that HCHOA's attempt to terminate was invalid because HCHOA failed to (1) give written notice of its concerns and (2) failed to allow thirty days for SMG to rectify and address such concerns.

Our goal in contract interpretation is to determine the parties' intent and give effect to that intent. AB Realty One, LLC v. Miken Technologies, Inc., 466 S.W.3d 722, 729 (Mo. App. E.D. 2015). To determine the parties' intent, "we read the agreement as a whole and give each term its plain, ordinary, and usual meaning." Wilson Mfg. Co. v. Fusco, 258 S.W.3d 841, 844 (Mo. App. E.D. 2008). If the contract's terms are unambiguous, we determine the parties' intent only from the words of the contract itself. Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., 464 S.W.3d 177, 183 (Mo. banc 2015). Again, because interpretation of the terms of a contract is a question of law, our review in this matter is without regard to the trial court's interpretation of the contract language. Estate of Merritt, 428 S.W.3d at 742.

"A contract covering a certain period of time, but containing a conditional provision that it might be terminated before that time, will remain effective the full term, unless the condition of termination is fully complied with." Home Ins. Co. v. Hamilton, 128 S.W. 273, 274 (Mo.

6

App. K.C. 1910). When determining the sufficiency of a written notice, "technical accuracy in the wording of a notice is not required but the notice must be so certain that it cannot be reasonably misunderstood." Jetz Serv. Co. v. Chamberlain, 812 S.W.2d 946, 950 (Mo. App. W.D. 1991) (quoting Hawaiian Elec. Co. v. De Santos, 621 P.2d 971, 975 (Haw. 1980)).

Here, the plain and unambiguous language of Section 4 allows a dissatisfied party to terminate the contract for cause, on the express condition that three steps are followed. First, the dissatisfied party must give the other party "written notice of the concerns, along with a written list or matters on which said dissatisfaction is based." Second, the "dissatisfied party will allow the other party thirty (30) days to rectify and address such concerns." Third, "[i]f the dissatisfied party is still not satisfied with the management relationship thereafter," the dissatisfied party may provide the other party written notice terminating the contract for cause. Such termination is "effective thirty (30) days from the date of said written notice."

The fundamental issue underlying each point in this appeal is whether HCHOA properly terminated the contract under Section 4. The trial court concluded, and we agree, that HCHOA's letter of March 29 satisfied the first condition of Section 4. In its letter, HCHOA expressed its concern "that [SMG's] Management of the Master Association is causing a conflict of interest that has allowed our issues to go unaddressed or ignored." Specifically, the letter referred to two issues manifesting the perceived conflict of interest: "the Trash Can Screening issue and the Solar Panel issue." In both circumstances, HCHOA alleged that it had given SMG's property manager specific directions, which the property manager did not follow. While SMG argues that HCHOA's letter did not precisely track the contract language, SMG could not reasonably misunderstand from the letter that HCHOA was concerned about SMG's conflict of interest and, consequently, desired to terminate the contract. See Jetz Serv. Co., 812 S.W.2d at 950. The

7

record supports the trial court's finding that HCHOA's March 29 letter satisfied the first written-notice condition of Section 4.

The second condition of the termination process required that SMG be allowed thirty days to rectify or address HCHOA's concerns. To determine if this condition was met, we first must establish when HCHOA's written notice was effective. At first glance, the effective date of the notice appears to be March 29, the date of the letter. However, the trial court expressly found that this letter was "not received until April 23." We defer to the trial court's factual finding. White, 321 S.W.3d at 308. The trial court's finding is critical because the thirty-day cure period was not triggered until SMG was given written notice of HCHOA's concerns. We will not disturb the trial court's factual finding that HCHOA did not provide SMG with written notice of HCHOA's dissatisfaction until April 23.

Under the plain and unambiguous language of Section 4, the dissatisfied party must "allow the other party thirty (30) days to rectify and address" the complaints, and only "thereafter" may the dissatisfied party give a second written notice terminating the contract for cause. Thus, the plain language of Section 4 required HCHOA to allow SMG thirty days from April 23—which is May 23—to rectify and address the conflict of interest before HCHOA could give effective written notice terminating the contract for cause.

Having concluded that SMG had thirty days from April 23 to address HCHOA's stated concerns, the remaining determinative issue is whether HCHOA properly provided written notice terminating the contract *after* the thirty-day cure period. The trial court found that HCHOA's letter of May 6 fulfilled the third condition of Section 4. We disagree.

Had HCHOA delivered the May 6 letter to SMG after May 23, we would agree with the trial court. The letter reads that the "termination letter to SMG dated March 29, 2014 will stand.

8

The efforts of ... SMG to rectify the differences between [HCHOA and SMG] are not acceptable." The letter further instructed SMG to transfer its files on HCHOA to another management company. The trial court allowed three days for delivery of the May 6 letter; thus, it found that SMG received this second written notice on May 9. Whether we consider May 6 or May 9 as the date HCHOA gave SMG written notice to terminate would not alter our holding as both dates fall short of the thirty days to which SMG was entitled to rectify HCHOA's concerns.

We note that the email dated May 21 from HCHOA directing SMG to transfer its files to another management company reasonably might have qualified as the second written notice because the email rejected SMG's attempts to cure as unsatisfactory and further expressed HCHOA's desire to terminate the contract. However, this email suffers from the same deficiency as HCHOA's May 6 letter because it attempted to terminate the contract *before SMG was afforded a full thirty days to rectify and address HCHOA's concerns.* Thus, the May 21 email cannot qualify as written notice terminating the contract under the express written terms of the contract. The fact that the May 21 email was close to May 23 is inconsequential to the legal consequences of the untimely notice. See Leon v. Barnsdall Zinc Co., 274 S.W. 699, 702 (Mo. banc 1925) ("conditions imposed as precedent to the right to terminate must be complied with"); Home Ins. Co., 128 S.W. at 274 (holding that a contract will remain effective for the full term, unless the conditions for early termination are "fully complied with"); Home Ins. Co. of New York v. Horrell, 227 S.W. 830, 831 (Mo. App. Spring. 1921) (when a contract "provides for a certain form of cancellation the terms as therein provided must be strictly complied with").

The record before us contains no evidence of any other writing after May 23 that could be construed as the required second written notice of termination. The record before us leaves no doubt that SMG did not receive a full thirty days to address HCHOA's concerns before HCHOA

9

gave its notice of termination. Accordingly, HCHOA did not fully comply with the termination conditions in Section 4 and, so, did not properly terminate the contract. See Home Ins. Co., 128 S.W. at 274. Thus, the trial court erroneously applied the law when it ruled to the contrary. Point One is granted. Our holding that the contract was not terminated necessarily defeats HCHOA's petition, as the petition sought return of the monthly fees paid to SMG after the purported termination.

Further, because we hold that HCHOA failed to terminate the contract, SMG's Point Two—arguing in the alternative that the trial court improperly calculated damages to HCHOA—is now moot.

Finally, we address Point Three, in which SMG argues that the trial court erred in denying SMG's breach-of-contract counterclaim for damages on the remainder of the contract. The trial court did not fully consider SMG's counterclaim, finding instead that its "ruling that the parties' contract terminated in June 2014 effectively defeat[ed] [SMG's] counterclaim." Given our holding that the trial court misapplied the law and erroneously found that HCHOA properly terminated the contract, the trial court's decision not to fully consider SMG's counterclaim was also error. Thus, we grant Point Three.

Our holding, as explained above, necessarily defeats HCHOA's petition. However, we are unable to conclude from the record whether SMG is entitled to judgment in its favor on its breach-of-contract counterclaim. The record before us is clear that HCHOA had no intent to perform on the remainder of the contract. However, that single fact is not determinative of SMG's counterclaim. Importantly, the trial court made no factual findings or any original determination as to whether SMG proved each of the required elements of its breach-of-contract counterclaim. For example, the trial court must determine whether SMG proved that it

10

performed its obligations under the contract, that HCHOA breached the contract, and that the breach caused damages. See Vantage Credit Union v. Chisholm, 447 S.W.3d 740, 745 (Mo. App. E.D. 2014) (listing the essential elements of a breach-of-contract claim). We cannot decide whether SMG proved each element in the first instance because, as "a court of review," our "function is not to hear evidence and, based thereon, to make an original determination." Campbell v. Cnty. Comm'n of Franklin Cnty., 453 S.W.3d 762, 767 (Mo. banc 2015) (quoting Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978)). "In other words, there can be no review of a matter which has not been presented to or expressly decided by the trial court." Id. (internal quotation omitted). Such an original determination is for the trial court to make. On remand, the trial court should consider SMG's counterclaim, make the required factual findings, and enter judgment accordingly.

## Conclusion

The judgment of the trial court is reversed. The case is remanded to the trial court with instructions to enter judgment in favor of SMG on HCHOA's petition; to make the required factual findings regarding SMG's counterclaim; and to enter judgment on the SMG's counterclaim in accordance with its factual findings.

KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

11