**J.H. BERRA CONSTRUCTION CO., INC., Appellant,**

v.

**CITY OF WASHINGTON, Respondent.**

**ED 104529**

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

Filed: February 14, 2017

David L. Walsh, St. Louis, MO, for appellant.

Steven M. Cockriel, St. Louis, MO, for respondent.

Gary M. Gaertner, Jr., Judge

## Introduction

J.H. Berra Construction Co., Inc. (Berra) appeals from the trial court's judgment in favor of the City of Washington (the City) in Berra's contract dispute following a bench trial. On appeal, Berra argues the trial court erred in concluding Berra was liable for a certain amount of liquidated damages, because the trial court misapplied the law in interpreting terms of the contract in calculating liquidated damages and because those terms were ambiguous. We reverse and remand for further proceedings in accordance with this opinion.

## Background

Berra and the City entered into a contract drafted by the City for the construction of an expansion to the existing Washington Sanitary Landfill in Franklin County, Missouri (the Project). The contract both specified that Berra would complete the Project by November 27, 2013, and provided for a penalty of $950.00 for "each working day [1]" that Berra was in default after the contracted completion date. The contract did not define the term "working day." Berra did not complete the Project until June 23, 2014. The City assessed liquidated damages of $133,000.00 for 140 working days, which it calculated by counting each non-holiday Monday through Friday between November 28, 2013 and June 23, 2014.

Berra filed a petition for damages claiming the City breached the terms of the contract by assessing and withholding $133,000.00 in liquidated damages because, as relevant to the issues on appeal, the contract provided for a penalty only for each "working day," but the City assessed a penalty for all non-holiday days Monday through Friday regardless of whether work was possible due to weather. Berra argued only days when work was possible due to weather conditions were "working day[s]." Moreover, Berra argued the City had agreed to suspend work between December 17, 2013 and April 17, 2014 due to frost permeation, and thus the City should not have considered those days as "working day[s]" for the purpose of accruing damages.

At a bench trial, the parties presented the following evidence, as relevant to the issues on appeal. An engineer from the City testified that she did not suspend the Project between December and April, although Berra did not work during that time. As to the calculation of damages, she testified that based on the wording of other portions of the contract she believed the contract defined a "working day" as all non-holiday days Monday through Friday, irrespective of whether the contractor was able to perform productive work.

For Berra, the foreman for the Project testified that the custom in the construction industry was to define a "working day" as only those days where the weather allowed productive work. Berra introduced exhibits showing that between November 28, 2013 and June 23, 2014, Berra was unable to complete productive work due to adverse weather conditions on November 29; December 12–13, 16; April 22, 25, 28–

---

1. Alternatively, the contract also used the phrase "each work day" in its provision as-

sessing liquidated damages. For clarity, we use the phrase "working day" in our analysis.

30; May 1–2, 13–16, 27–28, 31; and June 2, 4, 6, 9–16. Berra included in its list of nonproductive working days, days spent removing rain water from the construction site.

The trial court concluded that Berra had materially breached its contract obligations by failing to complete the Project by November 27, 2013 and was liable for liquidated damages in the amount of $133,000.00 for the delayed completion of the Project. The court found that Berra, and not the City, suspended work over the winter, and that, for the purposes of calculating liquidated damages, "working days" were every non-holiday week day. This appeal follows.

### Standard of Review

In a court-tried case, we will affirm the judgment of the trial court unless it is not supported by substantial evidence or is against the weight of the evidence, or unless the trial court erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. Prop. Assessment Review, Inc. v. Greater Mo. Builders, Inc., 260 S.W.3d 841, 845 (Mo. App. E.D. 2008). Although we defer to the trial court's factual findings, we "independently evaluate its conclusions of law." Monsanto Co. v. Syngenta Seeds, Inc., 226 S.W.3d 227, 230 (Mo. App. E.D. 2007) (citations omitted). The interpretation of a contract and questions of contractual ambiguity are matters of law, which we review de novo on appeal without deference to the trial court's construction. Id.

### Discussion

Berra raises two points on appeal, arguing that the trial court erred in finding Berra liable for liquidated damages of $133,000.00 because, first, the trial court misapplied the law by defining "working day" as all non-holiday week days regardless of weather conditions, and second, the term "working day" as used in the contract was ambiguous and the trial court erred in failing to resolve the ambiguity in favor of Berra. The second point is dispositive for both claims, and thus we do not address the first point.

"The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003). We read the contract as a whole to determine the intent of the parties and give the terms used their plain and ordinary meaning. Id. We will determine the intent of the parties based on the contract alone, and only where the contract is ambiguous on its face may we look outside the contract to determine the parties' intent. ATC Co. v. Myatt, 389 S.W.3d 732, 735–36 (Mo. App. E.D. 2013) ("An ambiguity must come from within the four corners of the contract; extrinsic evidence cannot be used to create an ambiguity"). A contract is ambiguous where its terms can be genuinely and reasonably construed in more than one way. Id. at 735. "An ambiguity arises in a contract if there is duplicity, indistinctness, or uncertainty in the meaning of the words used." Monsanto, 226 S.W.3d at 231 (citation omitted). To resolve an apparent ambiguity, the trier of fact looks to extrinsic evidence to determine the parties' intent. ATC, 389 S.W.3d at 735–36. If there is no evidence of the parties' intent, we construe any ambiguous language in a contract in the light most favorable to the party that did not draft it. Id. at 736; see also Twin River Const. Co., v. Pub. Water Dist. No. 6, 653 S.W.2d 682, 692 (Mo. App. E.D. 1983) (applying same principle to government contracts).

Here, the contract stated the City would assess a penalty of $950.00 for "each working day" that Berra was in default after November 27, 2013, but the contract did not define the term "working day." The contract specified that the documents forming the contract included any advertisements for bids, and that the principal contractor and all subcontractors "shall comply in all respects with the prevailing wage law, ..., [a]s incorporated in these contracts."[2] The advertisement for bids for the Project declared that "[i]f you have special needs addressed by the Americans with Disabilities Act, please notify Mary K. Trentmann, ..., at least five (5) working days prior to the bid opening you plan to attend." But the contract also incorporated the Missouri Division of Labor Standards wage provisions (prevailing-wage-law documents), which provided that employers have the option to schedule "regular workdays" of either eight hours Monday through Friday or ten hours Monday through Thursday, and that overtime work beyond 40 hours performed on Monday through Saturday shall be paid at one and a half times the hourly rate, while overtime work on Sundays and holidays shall be paid at double the hourly rate. The prevailing-wage-law documents noted that if a crew is prevented from working due to inclement weather, make-up work may be charged at the straight hourly rate, even if on Saturdays.

The first question before this Court is whether, within the four corners of the contract, the term "working day" is ambiguous, and we find that it is. The term "working day" has at least two meanings used in the contract. In one portion of the contract, "working day" appears to reference a typical business day, which is ordinarily understood to mean a day that most institutions, such as banks and governments, are open for business. See BLACK'S LAW DICTIONARY 402 (7th ed. 1999). However, another portion of the contract recognizes that construction crews do not necessarily work a typical Monday-through-Friday schedule and that the hours a crew is not able to work due to inclement weather do not count towards a 40-hour work week for the purposes of calculating overtime payments. Because the contract implies different usages for the term "working day," the term itself becomes indistinct and uncertain. See Monsanto, 226 S.W.3d at 231. Here, the term "working day" can be genuinely and reasonably construed in more than one way, and thus the contract is ambiguous on its face. See ATC, 389 S.W.3d at 735.

The next question before this Court is whether extrinsic evidence reveals the parties' intent for the meaning of the ambiguous term "working day." See id. at 735–36 (to resolve apparent ambiguity, the trier of fact looks to extrinsic evidence to determine parties' intent). Berra adduced testimony at trial that in the construction industry the term "working day" means days when the weather allows a contractor to perform work.[3] Conversely, the City engineer testified at trial that she believed "working day" meant all non-holiday week days, regardless of whether weather condi-

**2.** As well, the trial court found the "documents forming the Contract between the parties included the Contract Form, Project plans, and the documents contained in the Project Manual. (Exhibits 2 and 3)." The Project Manual included both, in Section 00100, the advertisement for bids and, in Section 00800, the following Missouri Division of Labor Standards forms for Franklin County:

Overtime Schedule—Building Construction, and Overtime Schedule—Heavy Construction.

**3.** Berra cited to Christopher & Simpson Architectural Iron & Foundry Co. v. E.A. Steininger Construction Co., 200 Mo.App. 33, 205 S.W. 278, 283 (1918), as support for this definition of "working day."

tions allowed work. Without evidence here of the parties' mutual intent for the meaning of "working day," we must construe the ambiguous term against the drafting party. See id. at 736. As drafter of the contract, the City could and should have included its intended definition for the term "working day," but the City did not.

Because the term "working day" was an ambiguous term for which there was no evidence of the parties' mutual intent, the trial court erred in favoring the construction proposed by the City, as drafter, of the disputed term. We reverse for the trial court to determine the correct number of working days between November 28, 2013 and June 23, 2014 when weather conditions allowed Berra to perform work.

Point two is granted.

### Conclusion

The judgment of the trial court is reversed and remanded in accordance with this opinion.

James M. Dowd, P.J., concurs.

Kurt S. Odenwald, J., concurs.