

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| VINEET SHARMA, ET AL., | ) | No. ED111318 |
| | ) | |
| Respondents, | ) | |
| | ) | |
| vs. | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| GLOBAL INVESTMENT GROUP, LLC, | ) | |
| | ) | |
| Appellant, | ) | Honorable Richard M. Stewart |
| | ) | |
| and | ) | |
| | ) | |
| TITLE PLUS, LLC, | ) | |
| | ) | |
| Defendant. | ) | Filed: December 19, 2023 |

## Introduction

Global Investment Group, LLC ("Seller") appeals the circuit court's judgment awarding Vineet and Pooja Sharma (collectively, "Buyer") $5,000, representing the return of earnest money deposit, and attorney's fees and costs. Seller raises two points on appeal. In Point I, Seller argues the circuit court erred in interpreting and enforcing a contract to purchase property ("the Contract") because it misapplied the law by ignoring and failing to enforce its clear and unambiguous language. In Point II, Seller argues the circuit court erred in interpreting and enforcing the Contract because its judgment is against the weight of the evidence given the record shows the circuit court

could not have reasonably found Buyer did not terminate the Contract during the due diligence period. Seller raised no point on appeal regarding the award for attorney's fees and costs.

Because the circuit court properly applied the law and its judgment is supported by the record, it did not err in awarding Buyer the return of earnest money. Points I and II are denied. Because Buyer is the prevailing party under the Contract, Buyer's motion for attorney's fees on appeal is sustained.

The circuit court's judgment is affirmed and the case remanded to calculate reasonable attorney's fees on appeal.

## Factual and Procedural Background

Seller buys and sells real estate. Buyer is involved in a business connecting local chefs, who prepare meals for delivery to customers. On August 30, 2021, Buyer and Seller entered into the Contract to purchase property in Overland, Missouri where Buyer planned to operate his food business. Buyer hired a realtor, B.S., to assist with the purchase and Seller was represented by its realtor, J.S.

The Contract required Buyer to deposit $5,000 earnest money, which Buyer paid to a title company. Paragraph 8 of the Contract details the conditions Buyer must meet to terminate the Contract and have the earnest money returned if the property is considered "unacceptable" to Buyer ("the due diligence period").

Buyer contacted the City of Overland to determine if a shared kitchen or commissary shared kitchen was permissible at the property. On September 15, 2021, the City of Overland stated the property's zoning designation did not allow a shared kitchen, commissary kitchen, or ghost kitchen. On September 16, 2021, B.S. informed J.S. the City of Overland's code did not provide for the business Buyer intended to operate and Buyer could not proceed with the purchase. In this

2

email, B.S. attached the letter from the City of Overland explaining its reasoning. Following other communications, on September 24, 2021, B.S. reiterated to J.S. Buyer could not proceed with the purchase of the property (collectively, "September emails").

On October 1, 2021, Seller's president stated Seller would not return Buyer's earnest money ("October 1 email"). Instead, Seller's president offered for Buyer to hire his attorney to help Buyer find a "work-around" of the city code. Seller's president threatened litigation and stated if Buyer was not willing to let Seller keep the earnest money, then Seller would seek the difference of any monies if the property sold for less than the sale price of $151,000, and for "attorney['s] fees, interest[,] and carrying cost[s]."[1] Buyer hired an attorney, and on October 8, 2021, Buyer's attorney restated Buyer would not proceed with the purchase due to Buyer's inability to obtain a permit from the City of Overland ("October 8 email").

Buyer then sued Seller, seeking the return of the earnest money and attorney's fees. Among other things, Buyer argued the earnest money should be returned because "[a]ll conditions precedent to [Buyer's] recovery and return of the earnest money have taken place." Among other things, Seller argued it was entitled to the earnest money as damages due to Buyer's failure to complete and close the purchase.

Following a bench trial, the circuit court entered judgment in Buyer's favor and against Seller awarding Buyer: the $5,000 earnest money, Buyer's attorney's fees, and costs. Seller appeals.

**Standard of Review**

The circuit court's judgment "is presumptively correct, and the appellant has the burden to demonstrate that the judgment is erroneous." *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679,

---

[1] Approximately one month after Buyer indicated they would terminate the agreement to buy the property, Seller sold the same property to a different party for $160,000, $9,000 more than the sale contract with Buyer.

3

691 (Mo. App. E.D. 2019) (quoting *Flooring Sys., Inc. v. Staat Constr. Co.*, 100 S.W.3d 835, 837 (Mo. App. E.D. 2003)). "Even if we find error, we cannot reverse the judgment unless we determine that the error 'materially affect[ed] the merits of the action.'" *Id.* (quoting *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 717 (Mo. App. E.D. 2014)). In a court-tried case, "we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it misstates or misapplies the law, or it goes against the weight of the evidence." *Scheck Indus. Corp.*, 435 S.W.3d at 717) (quoting *Brooke Drywall v. Bldg. Constr. Enters., Inc.*, 361 S.W.3d 22, 26 (Mo. App. W.D. 2011)).

"Where a misapplication of law is asserted, our review is *de novo*." *Golf Club of Wentzville Cmty. Homeowners Ass'n v. Real Homes, Inc.*, 616 S.W.3d 339, 342 (Mo. App. E.D. 2020) (quoting *Tribus, LLC*, 589 S.W.3d at 692). Where an against the weight of evidence claim is asserted, this Court "must 'defer to the [circuit] court's credibility determinations, explicit or implicit,' and can reverse 'only when we firmly believe the judgment is wrong.'" *Tribus, LLC*, 589 S.W.3d at 692 (quoting *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 704 n.3 (Mo. App. S.D. 2014)). This Court defers to the circuit court's factual findings, as the circuit court is in a superior position to assess credibility, and acknowledge the circuit court "is free to believe none, part, or all of any witness's testimony." *Id.* (quoting *Russ v. Russ*, 39 S.W.3d 895, 898 (Mo. App. E.D. 2001)). "An against-the-weight-of-the-evidence challenge accepts there is substantial evidence supporting a proposition necessary to sustain the judgment, 'but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact.'" *Id.* (quoting *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010)). "The evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the [circuit] court's judgment, and all contrary

evidence and inferences must be disregarded." *Id.* (quoting *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo. App. W.D. 2000)).

**Discussion**

*A. Party Positions*
*Point I: Misapplication of the Law*

In Point I, Seller argues the circuit court erred in interpreting and enforcing the Contract because it misapplied the law by ignoring and failing to enforce the clear and unambiguous language of the Contract. Seller argues the Contract and the September emails terminating the Contract are unambiguous and must be interpreted and enforced as written. Seller notes the Contract gives Buyer a "method" to terminate the Contract before closing. Seller contends Paragraph 8's "plain and unambiguous language" allows Buyer "to provide a written notice of an unacceptable matter" as an objection, but "does not allow [Buyer] to terminate the Contract simply because an [o]bjection exists." Seller asserts the initial email sent by Buyers on September 16 was not an objection, rather a termination breaching the Contract and forfeiting the earnest money. Seller further asserts this Court need not reach whether the October 1 email agrees or refuses to correct the objection because Buyer was "in default" under Paragraph 11 "when they terminated the Contract during the due diligence period." But, Seller contends, if this Court reaches the issue, the October 1 email "does not show or express an unwillingness to correct the [o]bjection." Hence, Seller argues, because Buyer terminated the Contract during the due diligence period contrary to Paragraph 8 and was in default under Paragraph 11, Seller can retain the earnest money deposit as liquidated damages under the Contract.

Buyer argues the circuit court did not err in interpreting and enforcing the Contract because it correctly interpreted the Contract's clear and unambiguous language finding Buyer complied with Paragraph 8 and was entitled to receive the earnest monies paid under Paragraph 11. Buyer

argues the circuit court correctly found, after reviewing the Contract and evidence presented at trial, Buyer gave Seller "timely notice" within thirty days from the effective date of the Contract of Buyer finding the property "unacceptable, due to the City of Overland's zoning code," Seller "did not agree, in writing, within [five] calendar days of [Buyer's] notice, to correct [Buyer's] objections," and because Seller did not correct Buyer's objections, Seller "was required to return the earnest money" to Buyer.

*Point II: Against the Weight of the Evidence*

In Point II, Seller argues the circuit court erred in interpreting and enforcing the Contract because its judgment is against the weight of the evidence given the record shows the circuit court could not have reasonably found Buyer did not terminate the Contract during the due diligence period. Seller asserts the challenged factual proposition is Buyer "did not terminate the Contract during the due diligence period." Seller contends there is no favorable evidence to support this proposition because the September emails show Buyer "terminated the Contract and [was] not going to purchase the Property[.]" Seller contends the trial record does not "induce a belief the challenged proposition is a reasonable inference given nothing in the record shows the Contract was not terminated during the due diligence period."

Buyer argues the circuit court did not err in interpreting and enforcing the Contract because its judgment was not against the weight of the evidence given the evidence at trial established Buyer terminated the Contract within the thirty-day due diligence period and Seller did not respond after receiving such notice of termination within the five-day timeframe as detailed in Paragraph 8. Given this evidence, Buyer argues the earnest money paid must be returned as stated in Paragraph 11. Thus, Buyer contends Seller "failed to sustain its burden to establish" the circuit

court's judgment was against the weight of the evidence. This Court will address these points together to avoid repetition.

*B. Analysis*

"The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *TNT Amusements, Inc. v. BFC Enters., Inc.*, 613 S.W.3d 403, 409 (Mo. App. E.D. 2020) (quoting *J.H. Berra Constr. Co., Inc. v. City of Washington*, 510 S.W.3d 871, 874 (Mo. App. E.D. 2017)). This Court reads "the contract as a whole to determine the parties' intent, and we give the terms used their plain and ordinary meaning." *Id.* The parties' intent is "based on the contract alone, and only when an ambiguity appears on the face of the contract do courts look outside the contract to determine the parties' intent." *Id.* "An ambiguity exists in a contract when there is duplicity, indistinctness, or uncertainty in the meaning of the words used." *Id.* "The parties' disagreement about its meaning does not render a contract term ambiguous." *Id.* "[B]ecause interpretation of the terms of a contract is a question of law, our review in this matter is without regard to the [circuit] court's interpretation of the contract language." *Homefield Commons Homeowners Ass'n v. Roy H. Smith Real Est. Co.*, 500 S.W.3d 910, 914 (Mo. App. E.D. 2016).

"A contract covering a certain period of time, but containing a conditional provision that it might be terminated before that time, will remain effective the full term, unless the condition of termination is fully complied with." *Id.* (quoting *Home Ins. Co. v. Hamilton*, 128 S.W. 273, 274 (Mo. App. 1910)). "When determining the sufficiency of a written notice, 'technical accuracy in the wording of a notice is not required but the notice must be so certain that it cannot be reasonably misunderstood.'" *Id.* (quoting *Jetz Serv. Co. v. Chamberlain*, 812 S.W.2d 946, 950 (Mo. App. W.D. 1991)).

Paragraph 8's plain and unambiguous language allows Buyer to terminate the Contract if the property is found to be "unacceptable to Buyer" on the express condition specific steps are followed.[2] First, Buyer "may notify Seller in writing of any matters pertaining to Buyer's Property and Records Inspection Contingency that are unacceptable to Buyer ("Buyer's Property and Records Objections")." But if Buyer does not notify Seller of Buyer's Property and Records Objections "within the time period stated herein [it] shall constitute a waiver by Buyer of any objections thereto or any right not to close by reason thereof." Second, if Buyer does timely notify Seller "in writing of Buyer's Property and Records Objections," Seller must, within five days of receipt of the notice, either "(a) agree in writing to correct . . . Buyer's Property and Records Objections, at Seller's expense, on or before closing; or (b) refuse to correct some or all of . . . Buyer's Property and Records Objections." If Seller fails to "respond in writing within the stated time period," such failure "shall constitute a refusal to correct all objections of Buyer." Third, if Seller "refuses to correct any or all of permitted objections of Buyer," Buyer has ten days to either "(i) waive Buyer's objections and proceed to Closing . . . or (ii) terminate this Contract by providing written notice of such termination to Seller prior to the expiration of said ten (10) calendar day period, whereupon all Earnest Money and interest thereon shall be promptly returned to Buyer[.]"

The issue in this appeal is whether Buyer properly terminated the contract under Paragraph 8. The circuit court concluded, and this Court agrees, as indicated in the September 24 email, Seller had "actual, timely notice," under Paragraph 8, Buyer "found the property unacceptable due to the

___

[2] Paragraph 8(b) states:

> Approval of the physical condition and records inspection by Buyer by 5:00 p.m. on 30 calendar days after the Effective Date. During the stated time period, Buyer and Buyer's representatives may, at Buyer's option, expense and sole liability . . . obtain copies of such . . . permits, licenses, approvals and such other records necessary and appropriate for the use and occupancy of the Property or reflecting the income or expenses of the Property . . . .

City of Overland's zoning code." In the September emails, Buyer indicated they would "not be moving forward" given the intended use of the Property was prohibited by the City of Overland. The September emails further stated "due to circumstances out of [Buyer's] control, [Buyer] will have to terminate" the Contract and based on the City of Overland's zoning code, "the Buyer's use of the Property is prohibited and hereby terminated effective September 16, 2021." While the September emails do not label themselves as "Buyer's Property and Records Objection," Seller could not reasonably misunderstand from the September emails Buyer found the City of Overland's denial of Buyer's use of the property "unacceptable to Buyer" initiating a desire to terminate the contract. *See Homefield Commons Homeowners Ass'n*, 500 S.W.3d at 915.[3] The circuit court did not misapply the law and the record supports the circuit court's finding Seller had actual, timely notice, as required under Paragraph 8(b), that Buyer found the property unacceptable due to the City of Overland's zoning code.

The next condition of the termination process required Seller, within five days from receipt of Buyer's objections to either agree in writing to correct the objections or refuse to correct them. If Seller did not respond in writing within five days, such failure constituted a refusal to correct Buyer's objections. The circuit court found "[u]pon receipt of the notice, [Seller] did not 'agree in writing to correct' [Buyer's] objection." The October 1 email was not a correction but a "take-it-or-leave-it offer under threat of litigation" suggesting a "dubious work-around of the zoning code, requiring [Buyer] to employ lawyers after the sale" presenting "uncertain costs, risks, and effects to the [Buyer's] business activities." This Court agrees the October 1 email shows Seller did not "'agree in writing to correct Buyer's . . . . Objections,' as required by the [C]ontract, but in effect

---

[3] Seller admits in its brief "There is no factual dispute that the intent of Respondents in the September [emails] was to notify Appellant of an unacceptable zoning matter and to terminate the Contract." Even though Seller disputes the effect of the September emails, Seller nonetheless admits it understood Buyer found the property unacceptable.

9

refused to do so." Additionally, Seller's failure to respond in writing within five days to the September emails also constituted a refusal to correct all of Buyer's objections. Thus, the circuit court did not misapply the law and the record supports the circuit court's finding Seller did not properly respond to Buyer's objections as required under Paragraph 8(e).

The final condition of the termination process required by Buyer when Seller refuses to correct Buyer's objections is to, within ten days, either waive their objections and proceed to closing or terminate the Contract "by providing written notice of such termination to Seller prior to the expiration of said ten calendar day period, whereupon all Earnest Money and interest thereon shall be promptly returned to Buyer[.]" The circuit court concluded, and this Court agrees, Buyer properly "terminated the [C]ontract by virtue of the [October 8 email] from their attorney." The October 8 email details the dispute about the earnest money because Buyer "could not proceed with the purchase of the real estate . . ." The October 8 email further requests the dispute end. Because Buyer provided written notice of termination to Seller within the proper period, the Contract required Seller to return the earnest money to Buyer. The circuit court did not misapply the law and the record supports the circuit court's finding Buyer properly terminated the Contract entitling Buyer to a return of the earnest money as required under Paragraph 8(f).

As supported by the record, Buyer complied with the conditions precedent to terminate the Contract under Paragraph 8 and Buyer was entitled to a return of the earnest money. *Cf. Homefield Commons Homeowners Ass'n*, 500 S.W.3d at 916 (record contained no evidence of any other writing that could be construed as complying with the required conditions to terminate). Thus, the circuit court did not misapply the law and its judgment is not against the weight of the evidence. Points I and II are denied.

10

*C. Attorney's Fees*

Buyer's motion for an award of attorney's fees was taken with the case. Section 11 of the Contract states: "In the event of litigation . . . between the parties, the prevailing party shall recover, in addition to damages or equitable relief, the cost of litigation including reasonable attorney's fees." Because Buyer is the "prevailing party," Buyer "shall recover . . . attorney's fees." Thus, Buyer's motion for attorney's fees on appeal is sustained, and we remand for the circuit court to calculate reasonable attorney's fees on appeal.

**Conclusion**

The circuit court's judgment is affirmed and the case remanded to calculate reasonable attorney's fees on appeal.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. and
Cristian M. Stevens, J. concur.

11